MARIAN COAL CO. v. PEALE.

(Circuit Court of Appeals, Third Circuit. April 19, 1913.)

No. 1,690.

**1. COURTS (§ 314*)—FEDERAL COURTS—ACTIONS—PROPER DISTRICT.**

Where plaintiff was a citizen of New York, and defendant was a Delaware corporation operating a coal washery in Pennsylvania, the federal forum, where jurisdiction depended solely on diversity of citizenship, was either in New York or Delaware, as provided by Act March 3, 1875, c. 137, 18 Stat. 470, as amended by Act March 3, 1887, c. 373, 24 Stat. 552 (U. S. Comp. St. 1901, p. 508).

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 860; Dec. Dig. § 314.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

**2. COURTS (§ 325*)—FEDERAL COURTS—SUIT IN WRONG DISTRICT—WAIVER.**

Where federal jurisdiction existed by reason of diversity of citizenship of the parties, but plaintiff sued in the wrong district, the error was waived by a demurrer filed by defendant, raising not only the question of venue, but also denying that plaintiff had a cause of action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 884; Dec. Dig. § 325.*

Waiver of right as to district in which suit may be brought, see notes to Memphis Savings Bank v. Houchens, 52 C. C. A. 192; McGinnity Co. v. Union Pac. R. Co., 87 C. C. A. 634.]

**3. APPEAL AND ERROR (§ 80*)—JUDGMENTS APPEALABLE—FINAL OR INTERLOCUTORY JUDGMENT.**

Where a decree appealed from determined the rights of the parties, the fact that it referred the cause to a master to perform certain ministerial duties with reference to ascertaining the amount of damages recoverable, no further judicial proceedings being contemplated, did not render it interlocutory, so as to preclude an appeal therefrom.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 429, 432, 433, 450, 456, 457, 494–509; Dec. Dig. § 80.*]

**4. SPECIFIC PERFORMANCE (§ 4*)—RIGHT TO RELIEF—CONTRACT REMEDIES.**

Defendant coal company, engaged in washing coal from the culm bank of a large colliery, in consideration of advances made to it by the plaintiff, agreed to deliver to him for sale all the output of its colliery until the bank was exhausted, the plaintiff to sell the coal and remit the proceeds, less a commission and a certain sum per ton, to be reserved and applied on his advances until repaid. The contract also provided that, in case of the default of the coal company, plaintiff should be entitled to a writ of estrepement, or to the appointment of a receiver by any court of competent jurisdiction in foreclosure, or any other proper proceeding, and that a writ of scire facias might issue, and an execution sale of the property be had for the collection of the whole amount of the debt and interest remaining unpaid, etc. *Held*, that the contract itself provided the remedies to be invoked in case of the coal company's default, which were more adequate than those which equity could afford, and that plaintiff, on the coal company's default, was not entitled to maintain a suit for specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 4; Dec. Dig. § 4.*]

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by John W. Peale against the Marian Coal Company. From a decree for complainant (190 Fed. 376), defendant appeals. Affirmed in part, and reversed in part.

John H. Dando, William P. Brewster, and John T. Lenahan, all of Wilkes-Barre, Pa., for appellant.

Franklin D. Peale, of New York City, Robert Snodgrass, of Harrisburg, Pa., and Joseph O'Brien, John P. Kelly, and William J. Fitzgerald, all of Scranton, Pa., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. [1, 2] The plaintiff is a citizen of New York, and in 1909 filed a bill in equity against the Marian Coal Company, a corporation of Delaware, operating a coal washery in Lackawanna county, Pa. The federal jurisdiction depended solely on diversity of citizenship, and under Act March 3, 1875, c. 137, 18 Stat. 470, as amended by Act March 3, 1887, c. 373, 24 Stat. 552 (U. S. Comp. Stat. 1901, p. 508) the federal forum was either in New York or in Delaware. But the suit was actually brought in the Middle district of Pennsylvania, and therefore, as the plaintiff was in the wrong court, the Coal Company was entitled to have the bill dismissed, without submitting to any inquiry into the merits of the dispute. Nevertheless, as the right to be sued in a particular court, and not elsewhere, is merely a personal privilege, a defendant may waive it, expressly or impliedly; and the company did waive it impliedly, no doubt through a natural desire not to omit any ground of objection. For, instead of confining its demurrer to the single ground that the plaintiff had sued in the wrong district, the company set up also the ground that the plaintiff had no case on the merits, and thus required the Circuit Court to pass on the substance of the controversy. To do this is to waive the privilege just referred to, as the Supreme Court has often held; and the Circuit Court was right, therefore, in so deciding. Its opinion, citing the authorities, will be found in 172 Fed. at page 639.

The controversy thereupon took the usual course. The company answered the bill, an examiner was appointed, much testimony was taken, argument was had, and the Circuit Court considered and decided all the questions in controversy. An extended opinion was filed on August 24, 1911, which is reported in 190 Fed. 376, and on the same date the following decree was entered:

"First. That the defendant be ordered and directed to specifically perform its contract with the plaintiff, by delivering to the plaintiff from the date of this decree the output of its washery.

"Second. That the defendant be enjoined by perpetual injunction from delivering any of the output of the washery and the Holden dump to any one other than the plaintiff.

"Third. That the defendant be and it is hereby required to account to the plaintiff for all moneys advanced by the plaintiff to it under the contract, which has not already been repaid, together with interest thereon, and that the defendant be required to account to the plaintiff for all dam-

ages sustained by the plaintiff by reason of the defendant's breach of contract.

"Fourth. That J. Fred Schaffer, Esq., be appointed a special examiner to state an account between the parties and report the same to the court."

[3] As a whole, the form of this decree is rather interlocutory than final; for, as will be observed, the third and fourth paragraphs direct the company to account, and appoint a special examiner (or master) for this purpose. But the true character of the decree appears upon further examination. The master reported, making some arithmetical calculations, and recommending a money decree in favor of the plaintiff. The court confirmed the report, and in March, 1912, entered a second decree, whose first three paragraphs are identical with the first three in the decree of August 24th. But the fourth paragraph now reads as follows:

"Fourth. That the defendant, the Marian Coal Company, pay to the plaintiff, John W. Peale, within six months from the date hereof, the sum of thirty-four thousand five hundred thirty-three and 94/100 dollars ($34,533.94), with interest from the 1st day of January, 1912, in full payment and satisfaction of the sum due to the plaintiff, John W. Peale, by the defendant, the Marian Coal Company, on the loan or advancement account, and the damages due by reason of the defendant's violation of the contract in suit."

And a final paragraph disposes of the costs. The appeal before us was taken in February, 1912, and, of course, is from the decree of August, 1911, as the decree of March, 1912, had not yet been entered. The motion to dismiss is put upon the ground that, as the August decree was interlocutory, the appeal should have been taken within 30 days; and the company resists the motion on the ground that the August decree was really final, since the master had nothing judicial to do, but was merely required to perform the ministerial labor of computation—the facts and the rules of decision having previously been ascertained by the court, with one or two unimportant exceptions. We think the company's contention must be sustained. The two lines of authorities on this subject—one stating the general rule, and the other stating the exception—are referred to in Latta v. Kilbourn, 150 U. S. 539, 540, 14 Sup. Ct. 207, 37 L. Ed. 1169:

"It is well settled by the decisions of this court that where the purpose of the suit is to obtain an account, such as that prayed for by the bill in this case and directed by the order of October 27, 1886, the decree is of such an interlocutory character that no appeal will lie therefrom. Beebe v. Russell, 60 U. S. (19 How.) 283, 285, 15 L. Ed. 668; Green v. Fisk, 103 U. S. 518, 26 L. Ed. 486; Keystone Manganese & I. Co. v. Martin, 132 U. S. 91 [10 Sup. Ct. 32] 33 L. Ed. 275; Lodge v. Twell, 135 U. S. 232 [10 Sup. Ct. 745] 34 L. Ed. 153; McGourkey v. Toledo & O. C. R. Co., 146 U. S. 544, 550 [13 Sup. Ct. 170] 36 L. Ed. 1083, 1085. In this last case the authorities are thoroughly reviewed as to what constitutes a final decree, and it was laid down as the general rule that if the court made the decree fixing the rights and liabilities of the parties, and thereupon referred the case to a master for a ministerial purpose only, and no further proceedings in court are contemplated, the decree is final, but if it referred the case to him for a judicial purpose, as to state an account between the parties, upon which a further decree is to be entered, the decree is not final."

Among the early cases that support the exception is Forgay v. Conrad, 47 U. S. (6 How.) 201, 12 L. Ed. 404; but a brief extract

from Beebe v. Russell, 60 U. S. (19 How.) 286, 15 L. Ed. 668, will sufficiently state the ground on which the exception rests:

"The object of the law and the interpretation of it by this court is to prevent a case from coming to it from the courts below, in which the whole controversy has not been determined finally, and that the same may be done in this court. We say: 'In which the whole controversy has not been determined.' Wherever it has been, and ministerial duties are only to be performed, though that be to ascertain an amount due, the decree is final."

See, also, Thomson v. Dean, 74 U. S. (7 Wall.) 342, 19 L. Ed. 94; Winthrop Iron Co. v. Meeker, 109 U. S. 180, 3 Sup. Ct. 111, 27 L. Ed. 898.

An examination of the master's report shows that his duties were ministerial and not judicial. No doubt he took a little "additional testimony, * * * covering shipments of coal from the defendant's washery from December 1, 1910, to September 30, 1911"; but this was the mere presentation of a supplementary statement, and was only intended to bring the account up to the date when the washery ceased operation after the suit was begun. The master's report leaves no doubt concerning the character of his duties:

"It appears, by an inspection of the opinion of the learned judge already filed in this case, that all the disputed facts, with the exception of two items ($145 and $125), have been determined in favor of the plaintiff, and that the books of account of the treasurer of the defendant, by which the plaintiff proved his case, were correctly kept. (Opinion, pages 18–20.) The two items above mentioned have been practically abandoned by the plaintiff. The defendant did not offer any books of account in evidence. The only accounts offered in evidence were the books of the defendant's treasurer, supervised by an expert accountant, and the books of the plaintiff, both offered by the plaintiff, and which correspond to the cent. The plaintiff also offered the tonnage figures of the Delaware, Lackawanna & Western Railroad Company, showing shipments by the defendant. These were not disputed. The plaintiff alone offered evidence on the loan account. In view of the opinion of the learned judge, it would be supererogation for the examiner and master to enter into a discussion of the facts, the law applicable thereto, or to report conclusions of law."

In our opinion the August decree was final for the purpose of appeal, and the motion to dismiss must be refused.

[4] But we discover no reason to disagree with the conclusions of the District Judge on the disputed questions, except in one particular. We are not disposed to set aside on technical grounds a settlement of conflicting claims that has only been reached after a long and bitter controversy. We content ourselves with saying that upon other matters covered by the assignments of error we accept the opinion of the District Judge, both for the facts and for his conclusions thereon, merely adding that we do not find it necessary to decide whether the plaintiff was a buyer of the company's coal, or an agent selling on a del credere commission. But we cannot agree to the first two paragraphs of the August decree, for the reason, briefly stated, that the agreement of April 11, 1907, has provided adequate remedies for its own enforcement. The agreement is a very careful and elaborate instrument. The District Judge quotes it in part (190 Fed. 378–380), and we shall refer to one more paragraph only. One who reads the whole agreement can hardly doubt that the par-

ties intended to meet every contingency that they were able to foresee, and in our opinion they did make ample provision for the present situation. The fourth paragraph is as follows:

"Fourth. In case the maturity of the amounts secured by said mortgage is accelerated as herein above provided, because of the default of the party of the second part, or in case of the failure of the party of the second part to repay the amount of said loans as hereinbefore provided, or any part thereof. or interest thereon, when due, the party of the first part shall be entitled to a writ of estrepement, or to the appointment of a receiver by any court of competent jurisdiction in foreclosure or any other proper proceeding; and a writ of scire facias may be issued forthwith on said mortgage and prosecuted to judgment, execution, and sale for the collection of the whole amount of said debt and interest remaining unpaid, together with all fees, costs, and expenses of such proceeding, including an attorney's commission of three (3) per cent. and all errors in said proceedings, together with all stay of, or exemption from, execution, or extension of time of payment, which may be given by any act or acts of assembly now in force or which may be enacted hereafter, are hereby forever waived and released."

Abundant care has therefore been taken here and elsewhere in the agreement to secure "repayment of the moneys to be advanced hereunder, with interest thereon, and due performance of the terms and stipulations of this agreement and of the leases aforesaid, * * * due performance of each being expressly understood to be of the essence of this contract and a material part of the security of the party of the first part" (the plaintiff in this suit). The mortgage contains an express stipulation making the whole sum secured thereby due and payable at once whenever the company shall make default in keeping "each and every of the stipulations of said agreement," and provides that in such event (and in other contingencies also) a writ of estrepement may issue, or a receiver may be appointed, or a writ of scire facias may issue forthwith, etc. In a word, the agreement takes up four distinct remedies, and makes them more effective in certain directions for the plaintiff's benefit, or it forestalls controversy by declaring expressly that they shall be applicable. The writ of scire facias may issue forthwith upon the mortgage, this being the usual Pennsylvania procedure upon such an instrument; and, as the company may impair the security, the plaintiff may apply for a writ of estrepement to stay waste, this also being a well-known remedy in Pennsylvania; or he may ask a court of equity to put a receiver into possession of the property; and, still further, if default continue for 30 days, he may enter an amicable action of ejectment in the state court, and proceed immediately to judgment and execution, thus taking summary possession of the premises. These remedies are certainly more complete than the decree now in question, which does not even make the attempt (futile as such an attempt would be) to compel the company to operate the washery. It simply requires the company to deliver the product of the washery to the plaintiff, and forbids delivery to any one else. If there should be no product, of course, the decree can do no more than maintain an expectant attitude. No doubt this is an effort to do indirectly what could not be done directly, namely, to compel the company to operate the washery; and perhaps we need not be sur-

prised that the effort has not succeeded. The only result has been to keep the washery idle, thus depriving both litigants of whatever ultimate advantage might have been gained by its operation. But, by using the remedies to which he is already entitled, the plaintiff may not only take possession, but may acquire title to the property in dispute, and may thereafter dispose of it as he sees fit, either by operating the washery himself, or by sale or lease to another person.

The present situation cannot be approved. We affirm so much of the decree as is contained in the third and fourth paragraphs, but we reverse the rest, with instructions also to set aside the first two paragraphs of the March decree. Each party to pay one-half the costs of this appeal.

This order is, of course, without prejudice to the plaintiff's right to use such remedies as he may be entitled to employ in any court of competent jurisdiction.