173 So. 4

## CORAL GABLES, Inc., v. PATTERSON.
### 3 Div. 184.

Supreme Court of Alabama.

Jan. 21, 1937.

Rehearing Denied March 18, 1937.

Ball & Ball, of Montgomery, for appellant.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellee.

## GARDNER, Justice.

Complainant seeks specific performance of certain contracts for the purchase of lots 1 to 7, block 20 of the Biltmore section of Coral Gables, Fla., complainant being successor in title to Coral Gables Corporation.

These purchase contracts were made by one Kolar with the latter corporation, and alleged to have been assumed by Patterson, the defendant.

Upon former appeal (Coral Gables v. Patterson, 231 Ala. 649, 166 So. 40), the holding was that the bill was without equity, and the decree sustaining demurrers thereto was accordingly affirmed. Complainant thereupon made amendments to the bill, and from the decree sustaining demurrers to the bill as amended, this ap-

peal is prosecuted. Some of the salient features of the contracts appear in the former opinion and need not be here restated.

■ The bill is filed under the authority of this court (Morgan v. Lewis, 203 Ala. 47, 82 So. 7), recognizing the right of the vendor of real estate to have specific performance decreed resulting in a sale of the land to satisfy the vendor's demand, and an execution against the purchaser for the unpaid balance of the purchase price, and the fact that the real estate made the subject of the contract is situated in another state presents no obstacle to relief of specific performance. George E. Wood Lbr. Co. v. Morris, 225 Ala. 281, 142 So. 508.

Differing materially in this respect from our own decisions, the opinion on former appeal observed that under the holdings of the Florida Supreme Court the remedy of specific performance in cases of this character does not authorize a deficiency decree for the unpaid balance of the debt, with citation of R. E. L. McCaskill Co. v. Dekle, 88 Fla. 285, 102 So. 252; McCormick v. Bodeker, 119 Fla. 20, 160 So. 483; though, we may add, as disclosed by these two latter authorities, such deficiency decree is recoverable in foreclosure of mortgages in equity. We may further add that these same authorities indicate that in specific performance there is in fact no recovery of a decree against the vendee for the purchase price, as in this state is permitted, but only an ascertainment of the amount due and an order for the sale of the property to satisfy such amount, or so much thereof as the proceeds warrant.

The opinion lays stress upon those features of the contract granting certain remedies to the vendor in event of default on the part of the purchaser with supplied emphasis as to certain clauses, and discusses the insistence made on the part of defendant that the maxim "expressio unius est exclusio alterius" would exclude a resort in equity for specific performance, the contract disclosing the parties had agreed upon the remedies to be pursued, citing 66 Corpus Juris page 1361; Marian Coal Co. v. Peale (C.C.A.) 204 F. 161; Fidelity Ins., Trust, etc., Co. v. Lichten, 11 Pa.Dist.R. 517.

While we think the opinion is properly to be interpreted as strongly indicating the view that this insistence by defendant was well taken, yet there was no definite holding to that effect. But as this question

presents itself at the very threshold of the case, we think it should have definite announcement.

There were involved in the transactions relating to this purchase seven lots situated in Coral Gables, Fla., in the Biltmore section, and a separate elaborate and distinct contract with note as to each lot. They were each identical, except as to the lot number, the purchase price, and such minor details. These contracts contain elaborate restrictions and limitations as to the property set out in minute detail, which are also to be incorporated in the deeds. They bear evidence of having been drawn with a skilled hand, and look to the interest of the vendor, and, as observed by the court on former appeal, "were carefully drawn for expeditious recapture of the land." Illustrative, is the provision following these elaborate restrictions, that if the purchaser or any one holding in his stead, "shall fail to comply with any of the above and foregoing restrictions, conditions or limitations within sixty days after written notice * * * at his * * * last known address by said first party, * * * then the said above described and conveyed property shall immediately revert to the said first party * * * who shall be entitled to immediately enter upon said property without notice and take possession of the same with full title in fee simple, together with all improvements thereon, and no waiver of any of these conditions, limitations or restrictions, expressed or implied, or failure for any length of time to enforce same, shall constitute a bar to such enforcement at any time." The concluding clause of the contract contains the provision for acceleration of the whole debt upon default in any one payment or the failure of the purchaser to perform any of the specified covenants, using the language, "then the whole amount payable hereunder shall thereupon become due and payable forthwith and recoverable at law by first party, together with court costs and reasonable attorney's fees incurred in collecting the same."

Then follows two other alternatives, the first as to the option of the vendor, in case of default, to treat the contract as void, reenter the premises and a forfeiture as to percentage of payments made; and the second, which provides for the contract to be foreclosed in equity in the manner provided and customary for the foreclosure of mortgages in Dade county, and a sale of all rights of the vendee at law or in equity with proper disposition of the proceeds, and appointment of a receiver, if so desired, by the vendor.

The restrictions and limitations set forth in the contract embrace the character of improvements to be made, their cost, their location from the street, the right of the vendor for street railways or bus lines, prohibition against removal of fruit trees and other details unnecessary to note. While only seven lots are here involved, yet each contract contains these restrictions as to the entire subdivision, and was drawn with meticulous care to include the whole.

Courts will take judicial notice of what is generally known within the limits of their jurisdiction (15 R.C.L. 1057), and this knowledge has been extended to a condition of "panic" in our country (Louisville & Nashville R. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001), and of the depression and its effect upon values between the years 1925 and 1934. Coral Gables v. Patterson, 231 Ala. 649, 166 So. 40.

Upon like reasoning, we think the court may properly take judicial knowledge that when this contract was entered into in August, 1925, there was in full sway what is generally referred to as the "Florida boom," wherein real estate was in constant exchange and contracts therefor "pyramided" at high and exorbitant prices, and in which the major portion thereof was purchased for immediate resale at a profit.

While it has been held that the mere fact the contract stipulates certain remedies, other than an action for purchase price, as available in case of breach, which remedies are available under the law independent of the contract, does not deprive the vendor of the right to sue for the purchase price (Strauss v. Yeager, 48 Ind. App. 448, 93 N.E. 877; 66 Corpus Juris 1361); yet it has been also held that where the contract prescribes certain methods of compensation or reparation in case of a breach, such methods are exclusive. Fidelity Ins., Trust, etc., Co. v. Lichten, 11 Pa. Dist. 517, cited in 66 Corpus Juris 1361. As further illustrative of this latter rule may be noted the case of Marian Coal Co. v. Peale (C.C.A.) 204 F. 161, here much in point, and T. B. Potter Realty Co. v. Derby, 75 Or. 563, 147 P. 548, as contrasted with differing contract provisions found in our own case of George E. Wood Lumber Co. v. Morris, 225 Ala. 281, 142 So. 508,

and with the language of other contracts noted in the opinion of the Derby Case, supra. See, also, note 32 A.L.R. 617, et seq. All of which merely tends to demonstrate the correctness of the observation of this court in Eaton v. Sadler, 215 Ala. 161, 110 So. 10, that after all it is simply a matter of intention of the parties to be gathered from the whole contract viewed in the light of the surrounding facts and circumstances.

So considered, we are persuaded the proper construction of these contracts leads to the conclusion that the parties intended the remedies therein stated to cover the entire matter and to be exclusive of other remedies, including that of specific performance. These contracts made in Florida and concerning real estate, there situated, contain several references to the laws of Florida. They were drawn, as stated, with elaborate and painstaking care in the light of and for the protection of the vendor, and looked to the speedy recapture and the resale in case of default.

True, in a general sense, it may properly be said that the expression "at law" does not mean merely a legal judgment, as distinguished from equitable judgment (Hooker v. Nichols, 116 N.C. 157, 21 S.E. 207; Fleming v. Burgin, 37 N.C. 584; 5 Corpus Juris 1438), but, on the other hand, when reference is made to "an adequate remedy at law," it is meant a remedy in a court of law. Webb v. Ridgely, 38 Md. 364. The true meaning depends much upon the context.

And, in the contract in question we think the first provision as to default and acceleration of the whole amount payable thereunder, the expression "recoverable at law" was intended to have reference to a suit at law to recover the purchase price. After stating the second alternative of declaring the contract void and repossession of the premises with forfeiture, the third alternative is a suit in equity for foreclosure as in foreclosure of mortgages in that county. When, therefore, a resort to equity was considered, the parties preferred the mortgage foreclosure proceedings to that of any other, including specific performance; and, clearly, that proceeding embraces all advantages to the vendor that specific performance gives, and more, for, as previously observed here and as pointed out in our former opinion, no deficiency judgment was obtainable in that state in specific performance procedure, though permitted in foreclosure of mortgages in equity.

As to the vendor, therefore (looking to the Florida law), the contract provided a more advantageous remedy than that of specific performance, and it is evident the skilled hand that drew the contract was well aware of this fact, and was of consequence indifferent to such a remedy.

As to the purchaser, clearly he would not have in contemplation the pursuit of such a remedy in another jurisdiction, which would be more disadvantageous to him than the rule of decisions of the state in which he made the contract, and by the law of which it was supposed to be controlled. He would clearly not have in mind any right of the vendor to in effect enlarge the contract by pursuing an equitable remedy in another jurisdiction, which gave to him advantages that were denied by the state where the contract was made and where the real estate was situate.

As previously noted, the contract discloses that it was drawn by skilled hands and by those who looked to the interest of the vendor and with reference to Florida laws. It was, in our opinion, drawn to meet all contingencies and to leave nothing to guesswork or conjecture. It was, we think, intended to cover not only all rights of the parties to the property, but all remedies as well, advantageous to the vendor in case of default.

Such conclusion excludes the remedy of specific performance here sought, and the demurrer to the bill for want of equity was properly sustained. This renders unnecessary a consideration of other assignments of demurrer discussed in briefs of counsel for the respective parties. The decree will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.