Coös,
June 24, 1926.

### John T. Quinn *v.* Guaranty Trust Company.

Under P. L., c. 262, s. 3, *pars.* I and III, a savings bank may invest in bonds which are a first mortgage lien upon real estate, although the mortgage does not run directly to the bank, but to a trustee for the bondholders.

Bonds which would qualify under *par.* I may be combined in a single issue with those which would qualify under *par.* III.

P. L., c. 262, s. 12, *par.* 15, does not preclude investments in the securities of New England manufacturing companies upon a basis other than corporate earnings. Such securities may qualify as legal investments for savings banks upon the basis either of corporate earnings or of the value of the real estate upon which they are a first mortgage lien.

The statement required by P. L., c. 262, s. 3, *par.* IX, to be affixed to certain securities is not required in the case of bonds secured by mortgage. The requirement applies only to notes.

Bonds secured by the property prescribed by statute are not made ineligible as savings bank investments by the fact that they are also secured by other property.

Bill in Equity, to restrain proposed action of the defendant as to the purchase of a bond. The question is whether certain bonds issued by the Brown Company are legal investments for savings banks and the savings departments of trust companies. The Brown Company is a New England manufacturing company and its principal place of business is at Berlin. The bond issue is secured by mortgages of the company's real estate in New Hampshire, its timber lands in Maine and Vermont, and personal property in New Hampshire, and by a pledge of stock in other corporations. The issue is alleged to exceed seventy per cent of the value of the New Hampshire real estate, or fifty per cent of the value of the Maine and Vermont timber lands. It does not exceed the amount of the two sums mentioned.

The Attorney-General was granted leave to intervene on behalf of the plaintiff's contentions; and, by agreement of parties, the questions of law were transferred without ruling by *Burque*, J.

*Jeremy R. Waldron*, attorney-general (by brief and orally), for the plaintiff.

*B. Loring Young* (of Massachusetts) and *Demond, Woodworth, Sulloway & Rogers* (*Mr. Demond* orally), for the defendant.

PEASLEE, C. J. The legality of the defendant's investment in the bond of the Brown Company depends upon the construction to be put upon certain provisions of the statutes regulating the investments of savings banks and the savings departments of trust companies. The provisions which are material here are as follows:

" The following described notes and bond are legal investments:

I. NEW HAMPSHIRE REAL ESTATE. Those directly secured by first mortgage on real estate situated within this state; but no such investment shall be in a loan that exceeds seventy percent of the value of the real estate by which it is secured . . .

III. TIMBER LANDS. Those directly secured by first mortgage on timber lands situated within the states of Maine and Vermont, . . . and no such investment shall be in a loan that exceeds fifty percent of the value of the real estate by which it is secured." P. L., c. 262, s. 3, *pars.* I, III.

It is urged that the statute does not contemplate the purchase of bonds by savings banks, but merely permits the banks to take, as original obligees, bonds issued directly to the bank or under a deed of trust so made that the banks will at all times have full control over the matter of dealing with the security. It is manifest that such a construction would exclude all but small and strictly local bond issues. It may 'be that in some instances one bank, or a group of banks, takes and holds such an issue. But these securities are only a small fraction of those issued and upon the market. They constitute but a minute portion of the savings bank investments. As a practical proposition, the construction contended for would limit this class of investment to strictly localized issues, and would exclude all participation in those put out by large enterprises. The advantage of such a limitation is not apparent, and there is nothing in the language of the statute to warrant the conclusion that it was intended.

The argument that if purchase of bonds by the banks is permitted they will immediately invest in large amounts of low-grade securities, issued upon faith in the value of distant real estate, leaves out of consideration the fact that, under the plaintiff's admission, if the banks take the whole original issue or make a mortgage loan the investment is legal. That is, they may invest in bonds or loans of which the financial world knows nothing, but cannot buy those similarly secured whose value is constantly being passed upon by those best qualified to know. Such an object is not to be inferred, and has not been expressed.

The meaning of the phrase "directly secured by first mortgage" is entirely plain. If the obligation is made a first mortgage lien upon the particular real estate, the provision of the statute is complied with.

It is also urged that bonds which would be a legal investment under *s.* 3, *par.* I, and those which would qualify under *par.* III, cannot be combined into a single issue and still be within the statutory limitation. It is evident that the combined security is better than the two taken singly. All the security then stands pledged for all the debt and in the event of lack in one part the other can be called upon. The statute was designed to promote sound investments, and no reason appears for construing it in a way to include the lesser security and exclude the greater.

It is said that if this is permitted the state will lose the tax on bonds secured in part by foreign real estate, because of a claim that all are secured by the local mortgage. P. L., *c.* 70, *s.* 9. The statutory exemption does not extend to doubtful cases. One who claims it must "show that it is conferred by language open to no other conclusion." *State* v. *Savings Bank*, 71 N. H. 535, 537. The question is not presented by the case now under consideration; but if it were conceded that, contrary to all precedent, the exemption statute should be given the very broad application suggested, the conclusion here sought to be drawn would not follow. There is no evidence that the exemption statute was particularly in mind when the investment statute was revised; nor, if it was, is there anything to show that the legislature believed that the usual rule for the interpretation of such an act, as declared in *State* v. *Savings Bank, supra,* would be abandoned.

Another objection which is made is that the provisions of P. L., *c.* 262, *s.* 12, *par.* XV, preclude investment in the securities of New England manufacturing companies except upon a basis of corporate

earnings. The statute contains no such limitation. The provisions in section 12, like those in section 3, are permissive. Bonds of these companies qualifying under either section are legal investments. If this were not so, it would follow that a corporation engaged exclusively in dealing in real estate could qualify its bonds under section 3, while a manufacturing company that had not been in business five years could not, although it offered precisely the same security. No such discrimination was intended.

The reason for the two classes of qualifications is plain. In the first class (section 3) the value of the property upon which the creditor obtains a direct lien is made the test, and the general financial responsibility of the debtor is not considered. In the second class (section 12) the debtor's general financial standing determines the availability of its securities as savings bank investments. A bond may qualify under either section, or under both.

Complaint is also made that the defendant's officers do not purpose to affix to the purchased bond a certificate provided for by the statute. "A statement in such form as may be required by the bank commissioner, signed by the board or officer passing upon loans secured by real estate, as described in paragraphs I, II and III, shall be attached to each note so secured, certifying that to the best of their or his knowledge and belief said loan did not exceed, on the date of making, the legal percentage of the value of the real estate by which it is secured." P. L., c. 262, s. 3, par. IX.

This provision was first adopted in 1925. Laws 1925, c. 143, s. 17. It was enacted as an amendment to section 3. That section deals with both notes and bonds by name and follows a section in which each obligation is defined. If there had been an intent to have this amendment apply to both notes and bonds it is manifest that it would have been so stated. The certificate is not required.

No other legal objection to the eligibility of the bonds in question has been urged, and none is perceived. The bonds are admittedly secured by first mortgages upon real estate of the kinds and amounts which the legislature thought would furnish a sufficient margin of safety. That they are also secured by the additional pledge of large amounts of other property, does not make them less valuable or render them ineligible as bank investments.

*Bill dismissed.*

All concurred.