(Nos. 23199, 23200, 23201.—

IN THE MATTER OF THE ESTATES OF JOSEPH LALLA, ELIZABETH G. WATERBURY, and LAVERNE LUCILLE KELLOGG *et al.*—(H. R. POOL *et al.* Appellants, *vs.* EDWARD MELKA *et al.* Appellees.)

*Opinion filed February 14, 1936—Rehearing denied April 10, 1936.*

622

H. R. Pool, guardian *ad litem,* for appellants.

Scott, MacLeish & Falk, Robertson, Crowe & Spence, John P. Conmy, and Frank J. Komarek, (Homer H. Cooper, of counsel,) for appellees.

Mr. Justice Jones delivered the opinion of the court:

Three cases originating in the probate court of Cook county are here by appeal from the Appellate Court for the First District. For the purpose of consideration they were consolidated. The question in each case relates to the right of a conservator or guardian to invest the funds of his ward in notes or bonds which are a part of an issue of similar instruments, secured by a first real estate mortgage or trust deed, the remaining notes or bonds being held by other parties. Such securities, when so sold and distributed, are ordinarily called "split mortgage" securities. The funds in each case were derived from the United States Veterans' Administration or its predecessor. The administrator of veterans' affairs and the guardian *ad litem* of the several wards objected to the approval of the respective final accounts of the conservator of Joseph Lalla, the guardian of Elizabeth G. Waterbury and the sureties on the bond of the guardian of the Kellogg minors. For convenience the three cases will be referred to as the Lalla case, the Waterbury case and the Kellogg case.

The investments were made by purchases of the securities from different banks. In the Lalla case the conservator purchased a note for $1000, being one of a series of seventeen notes aggregating $16,000, made by William and Leah Fine. He also purchased a note for $500, being one of forty-five first mortgage gold bonds aggregating $35,000, issued by the Hawthorne Roofing and Tile Company.

In the Waterbury case the guardian purchased two $500 first mortgage gold bonds of the Enterprise Parlor Fur-

niture Company out of a total issue of $30,000. The notes and mortgages in both the Lalla case and the Waterbury case expressly provided they were payable without priority or preference. Each purchase was made by the conservator or guardian under the authority of a prior order of the probate court.

In the Kellogg case, pursuant to authority previously obtained from the probate court, the guardian purchased for his wards two $1000 first mortgage gold bonds executed by Eric and Esther L. Linn, out of eleven bonds aggregating $10,000, due serially on different dates. The two bonds purchased were a part of $9000 due on the last maturity date. The guardian also purchased for one of her wards, without a prior order of the court, a $250 first mortgage gold note executed by James P. and Mary McGee, being one of sixty-one notes amounting to $35,000, due serially on different dates. The $250 note was due on the next to the last maturity date. The guardian afterwards procured an order purporting to authorize the purchase of said note. She made purchases of the Anderson and the Schmitz notes without prior orders of the court, but such purchases were approved in her subsequent current accounts. The Anderson note was a first mortgage gold note for $500 made by Nils and Olga Anderson, belonging to an issue of sixteen notes aggregating $16,000, due serially on different dates, the first $5000 of which was paid before the guardian made his purchase. By a prior extension of all the unpaid notes the one purchased by the guardian and another note had first maturity in the series and were not in default. The Schmitz note was for $750 and was a part of a total of $21,000 represented by thirty-one notes, due serially on different dates. At the time of the hearing all of the notes purchased by this guardian, except the Anderson note, were in default. Unlike the notes in the Lalla and Waterbury cases, the trust deeds in the Kellogg case contained no parity clause, but each provided for

acceleration of the whole debt in case of any default or breach.

The probate court overruled the objections in the Lalla case and in the Waterbury case but sustained them in the Kellogg case. On appeal to the circuit court the matters were submitted as agreed cases, and the orders of that court were the same as in the probate court, except the objection to the purchase of the Anderson note in the Kellogg estate was overruled. On appeal to the Appellate Court the order of the circuit court in each case was affirmed. The appeal to this court is prosecuted by the guardian *ad litem,* H. R. Pool, and the administrator of veterans' affairs, Frank T. Hines. The sureties of the guardian in the Kellogg case have a cross-appeal challenging the correctness of the order in that case except as to the Anderson note.

The powers and duties of conservators and guardians relating to the investment of the funds of their wards are governed by separate statutes substantially alike. Each statute imposes the duty of placing and keeping the ward's money at interest upon securities to be approved by the court. The Guardian act (Ill. State Bar Stat. 1935, chap. 64, sec. 22,) provides: "Loans upon real estate shall be secured by first mortgage thereon and not to exceed one-half the value thereof. No mortgage loan shall be made for a longer time than five years nor beyond the minority of the ward: *Provided,* the same may be extended from year to year without the approval of the court." The act relating to conservators (Ill. State Bar Stat. 1935, chap. 86, sec. 18,) provides: "Loans upon real estate shall be secured by first mortgage or trust deed thereon and not to exceed one-half the value thereof. All loans shall be subject to the approval of the court." The parties are agreed that there is no substantial difference between the provisions of the two statutes.

The Conveyances act (Ill. State Bar Stat. 1935, chap. 30, sec. 61, p. 829,) provides, and this court has held, that a trust deed in the nature of a mortgage is a mortgage in its legal effect. (*Ware* v. *Schintz,* 190 Ill. 189; *Union Mutual Life Ins. Co.* v. *White,* 106 id. 67.) The statutory requirements relating to investments by guardians and conservators are mandatory. (*Chapman* v. *American Surety Co.* 261 Ill. 594; *Hughes* v. *Pecple,* 111 id. 457; *McIntyre* v. *People,* 103 id. 142.) They specify the securities upon which funds of a ward may be loaned, and in that regard they supersede the common law. (*Gits* v. *Foreman,* 360 Ill. 461; *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 id. 626.) It is therefore unnecessary to consider the common law powers of guardians with respect to the kind of securities which can be accepted for loans. The issue narrows itself to the question of whether or not the several notes and bonds in controversy are secured by first mortgages approved by the court.

Appellants claim that the word "loans," as used in the statute, embraces only the money advanced by the fiduciary, directly or indirectly, to the principal debtor; that the acquiring of existing notes secured by a first mortgage is not a loan but is an unauthorized investment; that the statute contemplates the mortgage must be first only as to a loan made by the fiduciary and excludes divided securities, and that its terms are plain and not subject to judicial construction. It is true that where language is unambiguous and conveys a clear meaning there is neither necessity nor authority for resorting to judicial construction. (*Sup* v. *Cervenka,* 331 Ill. 459.) The converse of that proposition is equally true. The statute does not define the term "loan." According to the circumstances under which it is used it has been variously defined. Webster's New International Dictionary gives several definitions of the term. Among them are: "That which one lends or borrows, esp. a sum of money lent at interest; as, he re-paid the loan." (*Beebe*

v. *Kirkpatrick,* 321 Ill. 612.) Webster also defines it as "A lending," and defines "lend" as, "To put out for hire or compensation." The transactions in controversy were the putting out of money for compensation. There is no difference in the legal effect of acquiring an existing first mortgage loan and taking a new obligation and a new lien of the same quality. The mechanics of the transaction are unimportant. The essence of a loan, under the statute, is, that the fiduciary puts out his ward's money for hire. In our opinion the dealings in these cases come within the definition of a loan.

The contention that the fiduciary must have an exclusive lien as to the security held by him and is forbidden to invest in divided securities requires more extended consideration. The statutory requirement is that loans upon real estate shall be secured by first mortgage thereon. A first mortgage is one which has priority over all other mortgages. (*Green's Appeal,* 97 Pa. 342.) Whether or not a mortgage is a first mortgage depends upon the quality of the lien it creates. Inasmuch as all mortgages are subject to the lien of taxes and special assessments they are not considered in defining the term. If a mortgage is not subject to another extrinsic lien or encumbrance it qualifies as a first mortgage. Its lien is measured by the amount of the debt it secures. (*Freutel* v. *Schmitz,* 299 Ill. 320.) Whether the debt is to a single person or divided among many does not affect the quality of the lien of the mortgage. However, the priority of different notes secured by the same mortgage may be different. Thus, where the mortgage secures notes due at different dates and there is no parity clause, the notes are entitled to priority of payment in the order of their maturity. As between the holders of such notes they are regarded as so many successive mortgages, each having priority according to the time of its maturity. (*Schultz* v. *Plankinton Bank,* 141 Ill. 116; *Gardner* v. *Diederichs,* 41 id. 158.) Where the several notes mature

at the same time, or where the mortgage contains a parity clause, there is no priority between the note holders. *Humphreys* v. *Morton,* 100 Ill. 592.

We do not agree with appellants' contention that where several notes on a parity are secured by the same mortgage the situation is the same as if they were secured by concurrent mortgages of the same quality. The debt is the principal thing and the mortgage is but an incident for security. (*VonCampe* v. *City of Chicago,* 140 Ill. 361.) Concurrent mortgages without priority among themselves are separate and distinct liens, and do not answer the statutory requirement that a mortgage taken by a guardian or conservator must have priority over all like liens. Where a mortgage secures several notes there is only one lien to secure the entire debt. The statute is directed at the kind and quality of the mortgage. A note which by reason of its earlier maturity has priority over all other notes secured by a first mortgage is as effectually prior to all other liens as if it were the only note secured by the mortgage. If it is on a parity with the other notes it is none the less secured by a first mortgage unaffected by the ownership of the other notes, and a mortgage which secures a note subject to the priority of earlier maturing notes is not a first mortgage as to that note.

The practice of investing trust funds as participating interests in proper securities has been generally approved. (Restatement of Law of Trusts, sec. *227j*; *In re Union Trust Co. of New York,* 219 N. Y. 514, 114 N. E. 1057; *Bowden* v. *Citizens Loan and Trust Co. of Mankato,* 259 N. W. (Minn.) 815; *Quinn* v. *Guaranty Trust Co.* 82 N. H. 392, 134 Atl. 45.) In the *Quinn case* it is said: "It is urged that the statute does not contemplate the purchase of bonds by savings banks, but merely permits the banks to take, as original obligees, bonds issued directly to the bank or under a deed of trust so made that the banks will at all times have full control over the matter of dealing with the

security. It is manifest that such a construction would exclude all but small and strictly local bond issues. * * * The advantage of such a limitation is not apparent, and there is nothing in the language of the statute to warrant the conclusion that it was so intended." The same contentions are made in this case and in our opinion are fully answered in the *Quinn case.* If the contention of appellants is correct and the fiduciary invested the funds of his ward in all of the notes secured by a first mortgage, and it became necessary to dispose of part of them for the support of his ward, he could not legally do so, because it would result in divided holdings and fall under the condemnation sought to be applied in the instant case. We cannot conceive that the legislature so intended.

In 1905 the Guardian act was amended by changing the permitted term of loans on real estate from three to five years. At the same session of the legislature a statute was enacted relating to powers of trustees. It permits investments in first mortgages upon real estate and in first mortgage bonds of any corporation upon which there has been no default in interest for a period of five years. Such bonds are in the class of divided securities. Appellants urge that the latter statute is *in pari materia* with the acts relating to guardians and conservators, and that, inasmuch as the legislature omitted to expressly authorize guardians and conservators to make investments in divided securities, they are inhibited from doing so. At its 1935 session the legislature authorized investments by trustees, guardians and conservators in bonds or debentures of national mortgage associations established under the National Housing act of Congress, or in bonds or notes secured by mortgage or trust deed insured by the Federal Housing administrator. Where such mortgages are given on large urban housing projects the notes or bonds may be divided among many holders. This legislation refutes an intent to prohibit guardians and conservators from investing in divided

securities. In our opinion the Guardian and Conservator acts do not prohibit such loans where they are prior to or on a parity with all other portions of the debt secured by the same mortgage.

The securities in the Lalla case and the Waterbury case were payable without priority or preference. When the Anderson note was purchased by the Kellogg estate, that note, and one other by extension, had first maturity in the series with a resulting priority. These investments complied with the governing statutes. When the securities were acquired they were not in default, and there is no testimony tending to show that at that time the property did not have a market value double the amount of the mortgage debt. The investments were approved by the probate court prior to their purchase or in subsequent current accounts before default, either of which fulfills the requirement as to approval. (*Bruner* v. *Wolford,* 356 Ill. 514.) No court could foresee the subsequent universal financial crash, which depreciated the value of all kinds of property. The holders of single mortgage notes suffered losses the same as holders of divided securities. The fact that upon foreclosure all of the holders of divided securities are in a way compelled to coöperate does not deprive the fiduciary or the court of jurisdiction over the management of the trust estate.

The remaining notes acquired in the Kellogg case were subject to the priority of other notes maturing earlier than those purchased by the guardian and were not first mortgage loans in the sense of the statute. The acceleration clause in case of default did not affect such priority. *Koester* v. *Burke,* 81 Ill. 436; 3 Jones on Mortgages, par. 2187; *Horn* v. *Bennett,* 135 Ind. 158, 34 N. E. 956; *Leavitt* v. *Reynolds,* 79 Iowa, 348, 44 N. W. 567.) The objections to the approval of these loans were correctly sustained.

The order of the Appellate Court in each case is affirmed.

*Orders affirmed.*