RALPH J. VOORHIES, and ADELE L. VOORHIES, and CLIFFORD WYCKOFF VOORHIES, v. CHARLES S. BLOOD, as Administrator of the Estate of Isabelle B. Voorhies, Deceased; WILLIAM R. O'NEAL, and FIRST NATIONAL BANK AND TRUST COMPANY IN ORLANDO, a national Banking Corporation; and M. O. OVERSTREET, as received.

173 So. 705.
Opinion Filed February 4, 1937.
Rehearing Denied April 21, 1937.

338

G. P. Garrett, for Appellants.

Baker & Thornal, Giles & Gurney and Pleus, Williams & Pleus, for Appellees.

TERRELL, J.—An opinion adjudicating the validity of the appointment of First National Bank and Trust Company in Orlando as trustee under the Will of Henry V. D. Voorhies was filed in this case December 30, 1936. In the present appeal we are concerned with the same parties and the same trust, but with the question of whether or not the trust was properly administered. We label them the first and second appeals, by which they will hereafter be designated, the ultimate purpose of the litigation being to secure an accounting. With reference to the creation and investment of the trust fund and the power of appointment, the Will contained the following:

"I give, bequeath, and devise to my wife, Isabelle B. Voorhies, and William R. O'Neal, the sum of Twenty-eight Thousand ($28,000.00) Dollars, but in trust, nevertheless, for the following uses and purposes only, to-wit:

"To invest the same in interest bearing securities or property which will produce an income and pay the income so received quarterly as follows: * * *

"I hereby nominate, constitute, and appoint my wife, Isabelle B. Voorhies, and W. R. O'Neal, the executors of this my last Will and Testament, hereby authorizing and empowering the said executors to bargain, sell, and convey any and all real estate of which I may die seized, without any order of court, and I further direct that should either or both of them refuse to qualify, they jointly, or either if the other is incapacitated, may appoint a successor or successors to carry out this trust, I direct that no bond shall be required of either or both of them."

The first appeal was from a decree on final hearing wherein we held that the First National Bank and Trust Company in Orlando was regularly and legally appointed as trustee by the executors acting under power given them in the last quoted paragraph of the Will and that if acts of mismanagement of the trust fund were committed they were chargeable to it. The cause was accordingly dismissed as to the executors but jurisdiction was retained for the purpose of requiring an accounting as to the trustee of its administration of the trust fund.

The first appeal was entered in October, 1935, supersedeas not having been sought or granted. The suit for accounting against the First National Bank and Trust Company for mismanagement of the trust fund was continued to final hearing and the chancellor entered his decree therein finding and holding that the trust fund had been invested

in certain mortgages on real estate, to-wit: The Bass mortgage; dated February 16, 1926, for $1500; the Garvin Mortgage, dated February 11, 1926, for $4000; the Black mortgage, dated November 4, 1927, for $5500; the Kyle mortgage, dated January 17, 1927, for $3500; the Ivanhoe mortgage, dated November 1, 1926, for $5000; that the Bass, Garvin and Black mortgages were purchased in the name of the trustee individually, that there was a total sum of $17,960.04 on principal and interest due the beneficiaries on said mortgages, that the assets of the First National Bank and Trust Company were augmented to the extent of the purchase price of said mortgages, and that having been purchased by the trustee individually and not for the trust fund they constituted a preferred claim against the assets of the trustee in the hands of the receiver. (The trustee went into the hands of a receiver after suit was brought.)

As to the Kyle, Ivanhoe, and Gwynne mortgages the chancellor found and decreed that they were purchased by the trustee in the name of and for the trust fund, that they were accordingly the property of the trust fund, a total of $17,000 of which was invested in them, that they were in arrears on principal and interest, and that the trustee should account to the beneficiaries of the trust showing a detailed account of all receipts and expenditures with reference to them. Jurisdiction was retained for the purpose of making appropriate orders after said accounting was made, a master having been appointed to take testimony and make findings of fact for that purpose.

Complainants appealed from that part of the decree holding that the Kyle, Ivanhoe, and Gwynne mortgages were purchased for and were a part of the trust fund and requiring the trustee to account to the beneficiaries for all receipts and expenditures from them. The receiver for the

trustee entered a cross appeal from that part of the decree holding that the Bass, Garvin, Black Mortgages were purchased by the trustee individually and not in its capacity as trustee, that they were accordingly the property of the trustee and constituted a preferred claim in favor of the beneficiaries against the assets of the trustee in the hands of the receiver.

It is forcibly urged that the appointment of the trustee was illegal and that it has no standing as such but having disposed of that question in the first appeal to the contrary, the simple question with which we are confronted in the second and cross appeal is whether or not the trustee exercised good faith and due diligence in the administration of the trust fund.

Appellants contend that this question should be answered in the negative. They ground this contention on the charge that the mortgages were purchased from the First Bond and Mortgage Company, a subsidiary of the trustee, and that they were assigned to the trustee individually and not in its capacity as trustee as the law requires, that said assignments were not recorded in the clerk's office, that the mortgages were allowed to default and no steps were taken to foreclose, that taxes and other assessments were permitted to accumulate against them, that as to some of the mortgages defaults of several years' standing accumulated, while as to others they were foreclosed after default and title to the property taken in the name of Firbmoco Corporation, a subsidiary of the trustee, and that no accounting or other information pertaining to said sales was rendered to the beneficiaries.

Some of these charges are not material to the main question and the record is such that others cannot be adjudicated on this appeal. The trustee was given absolute dis-

cretion in the matter of investing the trust fund, the sole requirement being that he invest it in "interest bearing securities or property which will produce an income" and pay it out quarterly as directed in the Will. Consent of the beneficiaries to its investment was not required though the record bears conclusive proof that it was invested in the mortgages heretofore listed with their knowledge and approval either personally or by counsel, that said investments were approved by the probate judge, and on the first interest date the beneficiaries were furnished a list of them.

The mortgages were purchased in December, 1927. The interest and other charges against them were paid regularly and no objection was raised to them until shortly before the bill was filed in December, 1932. In fact it is not shown that any fault was found with them for more than four years after purchase or until the mortgagors defaulted in their interest payments. It is shown that during this four-year period the beneficiaries received the income from the mortgages as the Will directs. There is no charge that the trustee squandered or in any manner misappropriated the trust funds, profited personally by the use of them, or was responsible for the decrease in value of the trust property.

It is true that the Bass, Garvin, and Black mortgages were assigned direct to the trustee, but its (trustee's) records of their administration show that all six of them were purchased with the trust fund, that all the trust funds were invested in them, and that they were .all purchased for the trust. The records of the trustee also show that from January, 1928, to January, 1934, a complete record of every charge, credit, and voucher pertaining to the administration of the trust fund was properly booked and kept in the utmost good faith, in fact these items show that the trustee actually advanced its own funds to keep faith with the ben-

eficiaries and every penny they were entitled to was distributed among them as long as payments were kept up on the mortgages.

We find nothing to support the chancellor's ruling as to the Bass, Black, and Garvin mortgages except the fact that they were assigned directly to the trustee and there was no causal connection whatever between the assignments and the depreciation in value of the mortgaged property. If the mortgages had been of questionable integrity when assigned or the trustee had continued to treat them as its own, the chancellor's holding would be sound, but not so when, as in this case, they were thought by prudent men to be good, were treated in every respect as the property of the trust for more than four years, with the knowledge, consent, and to the pecuniary benefit of the beneficiaries and the cause of their depreciation was one over which the trustee had no control and was in no sense responsible for. It is not always necessary that there be a causal relation between the acts of a trustee and a loss to the trust estate but the facts here do not bring it within that class of cases.

On the direct appeal it is contended that the chancellor was in error as to the Kyle, Ivanhoe, and Gwynne mortgages, because, while the assignments to the trustee show that they were assigned to it *as trustee,* they fail to show for whom it was acting as trustee. To support this contention reliance is placed largely on Section 5666, Compiled General Laws of 1927, as follows:

"Every deed or conveyance of real estate heretofore or hereafter made or executed in which the words "trustee" or "as trustee" are added to the name of the grantee, and in which no beneficiaries are named nor the nature and purposes of the trust, if any, are set forth, shall grant, and is hereby declared to have granted a fee simple estate with

full power and authority in and to the grantee in such deed to sell, convey, and grant both the legal and beneficial interest in the real estate conveyed, unless a contrary intention shall appear in the deed or conveyance; Provided, that there shall and did not appear of record at the time of the recording of such deed or conveyance, a declaration of trust by the grantee so described, declaring the purposes of such trust, if any, or that the real estate is held other than for the benefit of the grantee."

An examination of the body and title of Chapter 6925, Acts of 1915, from which Section 5666 Compiled General Laws of 1927, was extracted, discloses that the Act was intended to apply only to deeds of conveyance. We find nothing in the record before us to warrant its extension to assignments of mortgages nor do we find that it was designed to modify or in any way affect the rule with reference to the construction of trust instruments. In this case the assignments of the mortgages were mere incidents. The administration of the trust being assaulted, the trustee is entitled to have that tested by the manner in which he treated it and executed the essential incidents of it.

No particular words are necessary to create a trust. Any statement which shows without question that an estate is vested in one person for the benefit of another or for a definite purpose, if specific as to prerequisites, is sufficient. It is not necessary that the words "trust"or "trustee" be employed, Pomeroy, *Equity Jurisprudence* (4th Ed.) Section 1009. Even to admit that the assignments here conveyed a fee simple estate to the trustee with nothing more, the *bona fide* administration over a period of years repels any suspicion of wrong intent.

In a very exhaustive brief appellants rely on many authorities and in a supplemental brief they rely on the De-

cember, 1936, number of the Harvard Law Review in which the liability of a trustee is interestingly discussed. We have read this discussion and the cases cited especially those relating to the liability of the trustee when taking the trust property in his own name. We find no quarrel with the law as there enunciated but we do not consider them decisive of the case at bar.

No principle of law is better settled than that exacting good faith on the part of a trustee. If he takes title to his ward's property in his own name or commingles his funds with his own and loses the whole or any part of it he is responsible to the ward. This rule has been most rigidly applied in cases where the trustee takes worthless notes or securities or undertakes to speculate with his ward's funds. In some states the practise is condemned by statute. *In re* Bane, 120 Cal. 533, 52 Pac. 852. It is a wise policy and was intended to impress on trustees the importance of keeping their own and their ward's money separate. It is the only safeguard for infants and those whom they (trustees) represent.

The authorities generally agree that the duty to label trust property is required in aid of matters of proof. It prevents a trustee from substituting a less attractive for a more attractive investment, it puts the world on notice as to the status of the fund, and prevents the manipulation of trust properties. If the failure to label is *bona fide* and the conduct of the trustee shows conclusively that he has not manipulated the accounts of the trust to the prejudice of the beneficiaries he will not usually be held to account for losses that were not caused from his failure to label. A like rule applies where the trustee deals with itself or its subsidiary in the investment of trust funds. Guthrie's Estate, 320 Pa. 530, 182 Atl. 248; Chapter House Circle

of King's Daughters v. Hartford Nat. Bank & Trust Co. (Conn.), 186 Atl. 543; Appeal of Pennsyl (Penn.) 15 Atl. 719; Restatement of the Law of Trusts, par. 213.

The test of a trustee's *bona fides* is measured by the terms of the trust instrument and the diligence and good faith with which he executes it. The trust instrument involved in this case gave the trustee absolute power to invest the trust fund in "interest bearing securities or property which will produce an income." He could bargain, sell, and convey without court order. If he proceeded diligently to investigate and invest the trust fund in approved securities that men of intelligence and prudence were investing their own funds in and if he invested with an eye to preserving the principal and obtaining an income from it, the two primary purposes of the trust, he did all the law requires and cannot be held responsible for losses that were beyond his control.

This opinion does not adjudicate the charge of bad faith predicated on the alleged negligence of the trustee in permitting defaults, assessments, and other charges to accumulate against the mortgaged properties and taking no steps to foreclose or prevent them. Good faith requires that the trustee act promptly with prudence in such emergencies but in the light of prevailing circumstances. From an examination of the Chancellor's decree we are not convinced that he ruled on or considered this phase of the case. He withheld final jurisdiction for other reasons so on these charges we express no opinion but leave them open for the consideration of the chancellor in connection with the accounting where they should properly be considered.

Barring the exception thus noted on which we express no opinion, the record convinces us that the conduct of the trustee was up to the standard prescribed herein. It is

shown that when the mortgages in question were purchased they were thought by prudent men to be of value far in excess of the amount paid for them. If some or all of them were irregularly assigned this is immaterial when the books of the trustee show conclusively that they were purchased for the trust with the moneys of the trust, that no one was deceived by the manner of the assignments, that a strict account of receipts and disbursements from them was kept in the name of the trust, that the cause of their shrinkage in value was no fault of the trustee but was from a general depression in real estate values throughout the country, that the trustee profited in no sense from such depreciation and in fact it was a matter beyond his control. The strongest cases supporting this view are of late vintage. Chapter House Circle of King's Daughters v. Hartford Nat. Bank & Trust Co. (Conn.), 186 Atl. 543; Guthrie's Estate, 320 Pa. 530, 182 Atl. 248.

We hold, therefore, that First National Bank and Trust Company in Orlando was properly appointed as trustee, that the trust fund was invested as required by the Will, and that up to the time of the defaults and the accumulation of other charges against the mortgaged property there is no showing of bad faith or mismanagement of the trust on the part of the trustee. There was undoubtedly a shrinkage in the value of the trust property but this was years after its purchase, and it was due to a general depression in real estate values for which the trustee was not responsible and for which it did not profit.

It is contended by appellants that their appeal can constitute no basis for appellees' cross assignments because they (appellants) appealed only from a portion of the final decree. It is true that the appeal on its face is from a portion of the final decree but it is in effect so far as appellees

were concerned an appeal from the whole decree, so the cross assignments were properly predicated.

From this it follows that the judgment of the chancellor on the main appeal is affirmed while his judgment on. the cross appeal is reversed.

Affirmed in part, reversed in part.

ELLIS,. C. J.; and WHITFIELD, BROWN, BUFORD and DAVIS, J. J., concur.

## ON REHEARING

PER CURIAM.—The rehearing in this cause is denied on authority of what we said in M. O. OVERSTREET, as Receiver of First National Bank and Trust Company in Orlando, Florida, Appellant, v. RALPH J. VOORHIES, and ADELE L. VOORHIES, his wife, and CLIFFORD WYKOFF VOORHIES, Appellees, decided this date.

The rehearing is denied.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.