191 So. 873
**FIRST NAT. BANK OF BIRMINGHAM v. BASHAM et al.**

6 Div. 400.

Supreme Court of Alabama.

Oct. 5, 1939.

Rehearing Denied Nov. 23, 1939.

502

Cabaniss & Johnston, K. E. Cooper, and Forney Johnston, all of Birmingham, for appellant.

Wm. B. White, Douglas Arant, and Bradley, Baldwin All & White, all of Birmingham, for Birmingham Trust & Savings Co., amicus curiae.

Steiner, Crum & Weil, of Montgomery, for Alabama Bankers Ass'n, amicus curiæ.

R. J. McClure, of Birmingham, for appellees.

Wm. S. Pritchard and Winston B. McCall, both of Birmingham, amici curiæ.

John W. Lapsley, of Montgomery, for Superintendent of Banks of Alabama, amicus curiæ.

BOULDIN, Justice.

Bill in equity by beneficiaries of an investment trust against the trustee for alleged breach of trust in connection with certain loans of the trust funds.

The appeal is from a final decree for complainants surcharging these investments, and restoring the funds to the trust estate in the hands of the trustee of the continuing trust.

The controlling facts, substantially outlined, are these:

Virginia E. Jones, a resident of Birmingham, by her will bequeathed her residuary estate to the First National Bank of Birmingham, as trustee, for the use of her daughter, Alberta E. Basham, and her three children, Laura Virginia Ellis, Harlan Andrew Ellis and Ruth Evelyn Basham.

The trustee was vested with full power and authority to manage and control the trust estate, to invest and reinvest same as it may deem proper, and to make loans upon such security as it deems best, etc.

The net income from the trust estate was to be divided one half to the daughter, and the other half used for the maintenance and education of her three children. Distribution of income was to be made monthly, quarterly or semi-annually.

The trustee was authorized to pay over the shares of income accruing to the grandchildren from time to time to their mother.

As each grandchild arrived at the age of twenty-one, his or her share of the trust estate was to be determined and paid over. The duration of the trust was fixed at the arrival of the youngest grandchild at twenty-one years of age, if then living. The youngest grandchild was seventeen years of age in 1938. The trust will probably continue to 1942.

This Bank was also made executor of the will. In August, 1925, on settlement by the executor, the trust estate, aggregating $25,650, was taken over by the trust department duly organized and functioning under the national banking laws. 12 U.S. C.A. § 248(k).

The trust estate then consisted of investments in first mortgages on real estate held by decedent at the time of her death with one or more taken by the bank as executor. All these were safe investments, collected in due course.

The course of business pursued by the trustee in administering the trust, challenged as self-dealing, and mismanagement otherwise, made the basis of the decree here for review, was substantially as follows:

Deeming first mortgages on real estate the best available investments, safety and income considered, the trust department sought desirable loans of this class. Applications by prospective borrowers were made to this department. Upon investigating the borrower and proposed security, if favorably impressed, the trust department had the property appraised, either by a trust officer or a disinterested appraiser. Titles were examined and approved by an attorney satisfactory to the trust department.

Available trust funds for investment come at irregular intervals and in varying sums. It was the policy of the trustee to perfect desirable loans in advance, available for trust investments as trust funds accumulated.

Accordingly, upon approval of a loan by the trust department the bank advanced its own money to the borrower; notes and mortgage were made to the bank, not to the bank as trustee; the notes initialed by the trust officer, earmarking them for trust investments, were retained in the bank. The mortgage, after recording,

was retained in the trust department, as also the title documents, and insurance policies upon improvements as further security.

When sufficient funds accumulated in the trust fund account available for loans of the class, the trust department took over the notes, indorsed without recourse, and took an assignment of the mortgage in writing from the bank to itself, as trustee. This assignment was kept with other documents in the trust department, but not recorded in the Probate Office. The transaction was completed by charging the amount of the loan with accumulated interest against the trust account and crediting the bank with a like sum. The loans here in question were taken over at sundry dates, varying from one to six months, an average of some two and one-half months, after the loan was made.

The loans were taken over from joint trust funds, and allocated in specific amounts to several trusts having funds needing investments, the trust department issuing participation certificates, kept with other documents pertaining to the respective trusts.

Trust department books and records, multiple contemporary records, in the conduct of a trust business disclosed at all times the state of accounts and investments of each trust. Reports were made to beneficiaries bi-annually at first, and later annually, disclosing the status of the trust estate, and its investments.

In course of administering this Jones trust, investments were made in some twenty-five "participations" in real estate mortgages. By order of court the trustee was directed to pay over to the beneficiaries $150 per month, chargeable against the corpus of the estate, as far as necessary.

In meeting this allowance, settling with the eldest grandchild on arrival at age, and making an advance to the second grandchild upon his arrival at age, the trustee has paid to beneficiaries the sum of $23,072.23.

Six of these loans, made from 1925 to 1929, antedating the depression, aggregating $11,400, and later reduced by payments on the principle to $9,641.64, constitute the subject matter of this suit.

These investments are represented by participations in mortgage loans. The full amount of the several loans, represent

ing the interests of all participants, run from $3,500 to $20,000.

Being in default, these several mortgages were foreclosed in 1932 to 1934, and purchased by the bank, as trustee, for sums less than the mortgage debts, respectively.

The expenses of foreclosure were charged proportionately to the participating trusts, and set up as additions to the several investments to be realized from the property, or from the debtors. These properties are still held by the trustee, controlled, serviced and rented, for the use of the beneficiaries.

Little net income has been realized to date of taking testimony. These loans, yielding an income of 6½ per cent, were made on a basis of one-third to one-half the appraised value of the several properties; were approved by a competent, experienced personnel acting in entire good faith, with a view to safe investments, yielding much needed income.

We have deemed it just to all parties to thus present the full picture clearly presented by the record. Some details are yet to be noted.

The trial Judge rendered a carefully considered opinion. Full and studiously prepared briefs by counsel for the parties, and several briefs presented by amicus curiae on both sides, are on file. All, with the many authorities cited and discussed, have been carefully considered.

*Self-dealing.*

This was made one of the grounds upon which these loans were surcharged against the trustee.

■ Basically, self-dealing relates to transactions wherein a trustee, acting for himself and also as trustee, a relation which demands strict fidelity to others, seeks to consummate a deal wherein self-interest is opposed to duty. Typical cases are sales of individual properties to the trust estate, or purchases of trust property for his own benefit. Equity, in such cases, pauses not to inquire, whether the trust estate has sustained a loss. As a matter of public policy, and because of the temptation to wrong-doing, equity arms the cestui que trust with an election to affirm or disaffirm, unless countervailing equities have intervened.

■ This rule applies with full force to Trust Companies and Banks doing a trust business. Equity would not tolerate, for example, a transfer of a bank's own depreciated holdings to the estates administered in its trust department, passing its own probable losses to others toward whom it owes all the obligations of a trustee. Courts of equity would look with disfavor on any system of business, or set-up of records, which would lend itself to such practice in time of crisis, and closely scrutinize transactions in which there is suspicion of such action, by subterfuge or otherwise. Michoud v. Girod, 4 How. 503, 504, 522, 11 L.Ed. 1076, 1098; St. Paul Trust Co. v. Strong, 85 Minn. 1, 88 N.W. 256.

The instant case is not of the class thus condemned.

■ The evidence, both oral and documentary, discloses clearly and without dispute that these investments were made in the first instance for the benefit of trust estates; made pursuant to applications to the trust department and approved as good investments by that department The acts of the bank in making temporary advances of its own money were in aid of the trust department in obtaining good loans, that the beneficiaries of the trust estates should have prompt investments, yielding a good income.

*Trustee Taking Title to Trust Property in His Own Name.*

■ A trustee, who takes and holds title to trust properties in his own name, without a declaration of trust, or other clear evidence that it is held in his trust capacity for the exclusive use of the beneficial owner, is chargeable, in equity, with a breach of trust. Such a transaction is a commingling of trust properties with his own; clothing himself with indicia of title which he will not be permitted to gainsay when losses come. We have held he is chargeable with such losses. Chancellor v. Chancellor, 177 Ala. 44, 58 So. 423, 45 L.R.A.,N.S., 1, Ann.Cas.1915C, 47; De Jarnette v. De Jarnette, 41 Ala. 708.

■ There is no such breach of trust here.

The mortgage and notes securing the loan, as fully outlined above, were assigned to the trustee for the use of the trust estates at the same time trust monies were invested therein. The income derived therefrom for years accrued to the beneficial owners, and was faithfully devoted to

their use. The trustee's records disclosed the interest of each trust.

Appellees complain that these assignments were not recorded, that the records of the mortgages continued to show title in the name of the bank, not the bank, as trustee, until a declaration of trust was made after default, and for the purpose of disclosing the interest of the several trusts at the time of foreclosure.

No rights of third persons having intervention, nor loss to the trust estates, because of failure to promptly record assignments, we need not deal with the various contingencies which might arise in that regard.

Several courts, in view of the many complications which have arisen out of the depression period, emphasize the importance of having the public records speak the truth as to the ownership of trust estates. While the trustee's records may in good faith disclose the true facts, questionings may arise which would be easily prevented by recording assignments disclosing the ownership by the trusts at the time the investments are made. The failure to record assignments is probably the feature of the instant case most subject to criticism. Chapter House Circle of King's Daughters v. Hartford N. B. & Trust Co., 121 Conn. 558, 186 A. 543, 106 A.L.R. 260; In re Harton's Estate, 331 Pa. 507, 1 A.2d 292; In re Guthrie's Estate, 320 Pa. 530, 182 A. 248, 103 A.L.R. 1186.

■ Banks, authorized by law to engage in a trust business, owe the same fidelity, and are subject to the same rules governing individual trustees, when applicable on principle.

A distinction must be drawn between transactions wherein the interest of the bank and the trusts in its keeping are in common, as where the acts of the bank are in aid of such trusts, and transactions wherein their interests are antagonistic. Statutes conferring upon State or National Banks the power to engage in a trust business are designed to make available to investors the facilities and the experiences of Bankers in making investments, safeguarding the trusts by setting up trust departments, directly engaged in the handling of trusts, and keeping complete records of trust transactions relating to each trust, subject to examination by the supervising agencies of government.

Yet, inherent in this legal set-up, there is one financial institution wherein fiduciary relations are present in several directions.

Income from the trust department as well as from the commercial department enures to the stockholders.

In First National Bank of Opp v. Weaver, 225 Ala. 160, 142 So. 420, 88 A.L.R. 201, we considered the question of depositing the surplus monies of trust estates to trust accounts in the trustee bank.

■ Since the trustee has the clear right to deposit such funds in a good and solvent bank, there is no reason, nor legislative policy, to require deposit in a bank other than that selected by the settler to handle trust funds although the trustee bank, like any other bank, would hold them as available assets for loans on its own account. See, also, Robinson v. Williams, Superintendent, 229 Ala. 692, 159 So. 239. National Banks are required to deposit securities for the protection of such funds.—12 U.S.C.A. § 248(k).

As a business proposition, such deposits may enable the trustee to do a good service to the trust estates at less expense.

■ All this is to demonstrate the policy of our laws in disapproving transactions by such trustees where the personal interest of the trustee is at variance with the interest of those whom he represents in trust relations; and to uphold transactions in the common interest of the trustee and trust estates in his keeping. Equity rules are to be applied in recognition of this policy, and deal with realities, not matters of form merely.

■ The insistence that the collection from trust estates of interest on the loans for the time they were carried by the bank should be penalized as self-dealing is untenable. This merely meant the trusts took the loans at their present value. By what line of reasoning should the trusts receive this unearned increment, rather than the bank, who had earned it in carrying the loans in aid of the trusts? Evidence of re-examination of the securities when taken over by the trust department appears in the record. There is no evidence of depreciation between the original approval and final investment of trust funds.

*Combining Funds of Two or More Trusts being Administered by the Trustee in Making Investments.*

■ This form of investment, known as participations, was held by the trial court not to be-a breach of duty by the trustee per se, quoting with approval from the Restatement of the Law of Trusts, which, we may observe, purports to be a restatement of the common law as developed in this country.

But the holding that this line of business was a breach of trust in this particular case, and the reasons assigned for such holding, raises the most vital, and highly debated questions in the instant case.

This form of investment not having been directly considered in Alabama, appellees challenge all such investments made prior to the Act of 1937, hereinafter noted.

Many courts and text writers have indulged in prolonged discussions on the subject, especially in view of experiences growing out of the depression.

The advantages and disadvantages of this form of investment are treated quite fully in 3 Bogert on Trusts & Trustees, § 676.

In Chapter House Circle v. Hartford Nat. Bank & Trust Co., supra, the taking of such mortgages in the name of the trustee, the interests of the several trusts shown only by declarations of trusts in the hands of the trustee, was held a breach of trust. The instant case differs in that regular assignments were made when the trust funds were actually invested as heretofore shown. The Connecticut Court, however (186 A. page 547 et seq.), deals at length with the general question of participatory investments.

We merely summarize the advantages and disadvantages applicable to the instant case as presented by these and many other authorities. Among the advantages are listed: (a) The opportunity afforded to promptly invest trust funds in safe and desirable loans yielding good income; (b) less overhead expense in making and managing comparatively large investments; (c) a wider spread of investments for each trust; (d) the protection of all participants through the common trustee having no personal interest to serve in conflict with his duties as trustee.

Among the disadvantages listed are: (a) Such joint ownership jeopardizes the handling of each trust for the sole benefit of the cestui que trust, and maybe the proper identification of the properties of each trust; (b) the chance that the trustee may, in certain exigencies, be more tempted to sell his own securities to the trust estate; (c) participations are not marketable except within the family of trusts; (d) in case of foreclosure, a contingency to be anticipated, if the property must be purchased for the benefit of the investors, the ownership in common, in varied interests, is wholly undesirable, invites controversy as to disposition and management, in which the interests of the trustee, individually, may become involved, etc.

In Re Union Trust Co. of New York, 219 N.Y. 514, 114 N.E. 1057, 1058, the Court of Appeals of New York, in 1916, reached the following conclusion: "(2) The advantages that are frequently to be secured by combining trust funds to make a large and more satisfactory investment than can be made of the funds of one trust without combination are of sufficient importance and value to the several trust funds to overcome any disadvantage that may arise from the fact that the several owners of the investment may thereafter differ in the matter of handling the same. Trust funds have been, from time to time, combined for investment with satisfactory results, and the practice is generally recognized as proper for a trustee. 11 Ruling Case Law, 143; Barry v. Lambert, 98 N. Y. 300, 50 Am.Rep. 677."

This holding has been quoted with approval by the courts of many states.

The Supreme Judicial Court of Massachusetts, in Springfield Safe Deposit & Trust Co. v. First Unitarian Soc. et al., 200 N.E. 541, 544, considered a case in which the mortgage was taken and remained in the trustee individually, without formal assignment as here, but otherwise like unto the instant case in all substantial features.

We quote in extenso from that opinion:

It was stipulated in the agreed facts: "'Investment of trust funds held by corporate fiduciaries in participating interests in mortgages, similar to those held in this trust, have been made since 1892 and continuously thereafter. The aggregate face value of such participating mortgages held by Massachusetts trust companies in various trusts and estates administered by them is approximately $31,500,000, at the

present time, consisting of many mortgages. of varying amounts divided into a great many participating interests. They are largely held by many trust companies located in Boston, Worcester, Springfield, Quincy, Cambridge, Pittsfield and elsewhere in the Commonwealth, included among which are the six largest trust companies in Massachusetts. In addition to Massachusetts a similar practice has prevailed for many years in many other states in which corporate fiduciaries have held and now hold billions of dollars of these participating mortgages, such states including New York, New Jersey, California, Pennsylvania, Ohio, Wisconsin, Kentucky, Oklahoma, Louisiana, Mississippi, North Carolina, Tennessee, Georgia, South Carolina, Delaware, Maryland, Illinois and Missouri. Of these states only five have statutes adopted specifically authorizing these investments.' 'Continuously throughout this period and until the present extraordinary depression such investments have been most satisfactory and no losses on account thereof were suffered prior to the depression.' "

Dealing with whether such investments are warranted as matter of law, the opinion proceeds:

"The principle of law in this commonwealth governing the conduct of a trustee in making investments has been established for more than a century. A trustee is required to conduct himself faithfully and to exercise a sound discretion, and to be enlightened by observance as to how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital. Good faith and sound discretion, informed by experience and wise observation, constitute the standard. That standard is comprehensive and remains fixed.

\* \* \*

"The facts set forth in the record and already summarized show that the kind of investment here assailed comes within the rule governing trust investments as just stated. Participating interests in mortgages have been approved as investments for trust funds held by trust companies by the concensus of opinion among the responsible officers of trust companies covering a considerable time and a large area of the country. Investments of that na-

ture cannot be condemned under our rule so far as they rest upon good faith, sound discretion, and conformity to custom."

Among the authorities there quoted is the excerpt from In re Union Trust Co., supra, and 1 Restatement of Law of Trusts, § 227, J, reading: " 'The mere fact that trust funds are combined with funds not held in trust or with funds of other trusts in making investments does not necessarily make the investments improper, provided that the investments are in other respects proper. Thus, an investment of trust funds in a participating interest in one or more first mortgages on land, or in a group of securities which are all proper trust investments, may be a proper trust investment. Such investments are not proper if they are not such as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived.' "

Other authorities of similar import include: In re Lalla's Estate, 362 Ill. 621, 1 N.E.2d 50; In re Union Trust Co., 219 N. Y. 514, 114 N.E. 1057; Bowden v. Citizens' Loan & Trust Co., 194 Minn. 113, 259 N.W. 815; Lima First American Trust Co. v. Graham, 54 Ohio App. 85, 6 N.E.2d 33; Finley v. Exchange Trust Co., 183 Okl. 167, 80 P.2d 296, 117 A.L.R. 162; In re Harton's Estate, 331 Pa. 507, 1 A.2d 292; Quinn v. Guaranty Trust Co., 82 N.H. 392, 134 A. 45; In re Dalsimer's Estate, 160 Misc. 906, 291 N.Y.S. 34; In re Guthrie's Estate, 320 Pa. 530, 182 A. 248, 103 A.L.R. 1186; Voorhies v. Blood, 127 Fla. 337, 173 So. 705; 11 R.C.L. 143, Sec. 150; 65 C.J., 812, Sec. 691.

*Investment by Common Trustee of the Funds of One Trust in the Purchase of the Participating Interest of Another Trust in an Existing Investment.*

Two of the investments of this Jones trust now in question were acquired in this manner. The Jones trust had funds on hand for investment. The other trusts needed the money for distribution on making final settlement. The trustee, acting for both, invested monies of the Jones trust in the shares of the outgoing trusts in real estate mortgages, making full records of the transaction in the trust department.

The evidence, without dispute, discloses that in such transactions the security was reexamined and the loan considered well secured. That it was a good loan at the

time is not questioned, save in respect of the form of such loans above discussed.

Restatement of the Law of Trusts, § 170 (q) reads: "q. Duty of trustee under separate trusts. Where the trustee is trustee of two trusts if he enters into a transaction involving dealing between the two trusts, he must justify the transaction as being fair to each trust. If the circumstances are such that the interests of the beneficiaries of the different trusts are so conflicting that the trustee cannot deal fairly with respect to both trusts, he cannot properly act without applying to the court for instructions."

If fair to both trusts it is generally held such transaction will not be set aside. French v. Hall, 198 Mass. 147, 84 N.E. 438, 16 L.R.A.,N.S., 205; Springfield Safe Deposit & Trust Co. v. First Unitarian Soc. supra; Lima First American Trust Co. v. Graham, 54 Ohio App. 85, 6 N.E. 2d 33; 3 Bogert on Trusts and Trustees, § 543.

Such dealings are challenged as violation of the rule of undivided loyalty to each trust. If the trustee has no personal interest to serve, there is nothing inherent in such transaction inconsistent with full loyalty to both; may do both a good service. We do not concur with the views expressed in Barker v. First Nat. Bank of Birmingham, D.C., 20 F.Supp. 185, 190, to the effect that loyalty to the selling trust in such case demands a sale at the highest obtainable price, and loyalty to the buyer demands a purchase at the lowest price. One of the criticisms of participations is that the market therefor is limited to the family of trusts. It would be a severe rule to charge a trustee with a breach of trust toward the seller where he has obtained the full amount he would have received if he had collected the loan at the time, or a breach of trust toward the buyer who gets a good loan on like terms he would have gotten on a new mortgage, and without the expense of negotiating and closing a new loan.

■ We concur in the Restatement, supra, to the effect that when challenged as unfair, resulting in loss to the buyer, the burden is on the trustee to show the transaction was in good faith, and in the exercise of sound discretion and prudence in making this, as any other investment.

*Approval of Course of Business by Supervising Government Agencies.*

■ The record discloses regular examination of Trust Departments of National Banks under direction of the comptroller. Forms were directed to inquiries in many respects, among them: "9. Are participation mortgages and certificates in proper form and is an adequate record of the latter maintained?"

No objections were ever made to the methods of business here pursued.

The inference is clear that the examiners were advised of all the matters here complained of, fully disclosed by the records of the Trust Department, and that this course of business was known to and sanctioned by the comptroller.

It is enough to say the General Rule that the administrative construction of the laws by agencies created by law to administer them is to be given much weight, especially when long continued, applies with especial force to supervising agencies set up by law to supervise the doings of those engaged in a trust business, matters of so vital concern in a vast business of every day recurrence. State et al. v. Tuscaloosa Building & Loan Ass'n, 230 Ala. 476, 481, 161 So. 530, 99 A.L.R. 1019, and authorities cited; In re Stupack, 274 N.Y. 198, 8 N.E.2d 485, 110 A.L.R. 1158.

By "An Act To Prescribe Legal Investments Of Trust Funds By Fiduciaries," approved February 9, 1937, Acts Special Session 1936–37, p. 99, it is enacted: "Unless otherwise authorized or directed by the court having jurisdiction thereof, or by the will, trust agreement or other document which is the source of authority, a trustee, executor, administrator, guardian, or one acting in any other fiduciary capacity may, with the exercise of reasonable business prudence, in addition to any other investments now permitted by law, invest funds in securities or investments which, at the time of the making or purchase thereof, are included in one or more of the following classes: * * * (f) Promissory notes, bonds or other evidences of indebtedness secured directly or collaterally by mortgage or trust deed which is a first lien on improved real estate in this or any other State of the United States of America; provided that (1) no interest or participation in any note, bond, or other evidence of indebtedness secured by mortgage shall hereafter be purchased for any fiduciary account unless the entire principal indebtedness secured by the mortgage shall at the time be con-

trolled by the fiduciary, that (2) no such interest or participation less than the entire indebtedness shall at any time be sold by the fiduciary to any person, estate, trust or other entity, not controlled by the fiduciary, and that (3) no fiduciary shall hereafter purchase from any trust or estate under its control or from itself for any trust or estate any such loan, bond, or other evidence of indebtedness secured by mortgage, or interest therein, unless the items so acquired shall in good faith and with due diligence have originally been made or acquired by the fiduciary for trust investment."

For the purposes in hand, we merely observe that this Legislative Act, passed in the light of experience, declares a future policy approving participations, if made in the exercise of reasonable business prudence, provided the trustee controls the entire indebtedness so secured; sale of participations between trusts all controlled by the trustee; and assignment to the trust department of loans originally acquired in good faith and with due diligence for trust investments.

The Act does not purport to deal with former courses of business by trustees of this class, but is significant in declaring a future policy in keeping with that followed theretofore by this trustee. Counsel copy and comment upon Section 17, Regulation F, now in force, relating to Common Trust Funds handled by banks of the Federal Reserve System. These are not in the record and we forego comment thereon.

 We find the investment of funds of several trusts in one loan secured by real estate mortgage, the transfer of participations between trusts, aiding the trust department in acquiring good loans in advance, and the keeping of full records, all in line with that disclosed in the case in hand have been, for a great many years, the practices pursued by well conducted trust departments, especially in states where such business has been of long standing and greatest volume; that such line of business has been long sustained by eminent courts in these states followed by others from time to time; that like dealings have long been in vogue in Alabama, all with the knowledge and sanction of supervising agencies, State and Federal.

 At this late day, we would not declare any such activities a breach of trust, provided, always, in every transaction, and in relation to every trust estate, the trustee has acted in good faith, with the wisdom, experience and prudence, which careful investors observe in their own affairs. Those engaged in such business are to be taken as under implied promise so to do.

Still another principle must be considered in dealing with surcharging the trustee with amounts invested in these several loans.

 Where the trustee has acted in good faith, and no loss has resulted to the trust estate by his course of dealing, he will not be charged with losses which would have come regardless of any dereliction on his part, such as losses due to unforeseen and violent curtailment of income, and depreciation in real estate values by reason of the depression of the early 1930's.

 We would say that good faith excludes self-dealing so clearly fraught with evil as not to be tolerated on grounds of public policy, hereinabove treated.

 To charge a trustee with losses due to no bad faith, and resulting from causes not to be reasonably foreseen by prudent investors, and entirely beyond his control, is to penalize the trustee. Equity disfavors penalties.

Thus, in Chapter House Circle v. Hartford Nat. Bank & Trust Co., supra, one of cases most critical of the matters here complained of, the opinion concludes [121 Conn. 558, 186 A. 550, 106 A.L.R. 260]: "Where, as in the case before us, the trustee, acting in good faith, in accordance with established banking practice, evidently believing that by taking an investment in its individual name it was not acting improperly, takes a security which is in itself a proper investment for trust funds; where, by a declaration of trust in the file of the particular trust and upon its books, the fact that the security represents an investment of the funds of the trust is evidenced and it has done nothing to mislead the beneficiary; and where the loss is due to general business conditions which would have brought it about even though the investment had been taken in the name of the trustee as such—we find no sufficient reason for the imposition of the penalty."

The court then adopted Restatement, Trusts, Vol. 1, § 179(d), saying: "'If the trustee takes title to the trust property in his individual name in good faith, and no loss results from his doing so, he is not liable for breach of trust.'"

On second appeal in that case (124 Conn. 151, 199 A. 110, 111) it was held: "Proof of material loss directly resulting from the breach of trust was a necessary condition of granting the plaintiff substantial relief."

▮ With much unanimity the courts throughout the country have approved these views in dealing with losses of trust funds as a result of the depression. To hold trustees responsible for such losses is to impose a measure of duty more exacting than the standard everywhere recognized. Losses in such case are in common with the losses sustained by millions of wise and prudent investors of their own funds. Courts take judicial notice of the collapse of values by the depression. Hodge et al. v. Joy et al., 207 Ala. 198, 92 So. 171; Coral Gables, Inc. v. Patterson, 233 Ala. 602, 173 So. 4; Home Bldg. & Loan Ass'n v. Blaisdell et al., 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481; In re Guthrie's Estate, 320 Pa. 530, 182 A. 248, 103 A.L.R. 1186; Springfield Safe Deposit & Trust Co. v. First Unitarian Soc., Mass., 200 N.E. 541, 546; Voorhies v. Blood, 127 Fla. 337, 173 So. 705, 709; Lyman v. Stevens, 123 Conn. 591, 197 A. 313, 318; People's State Bank & Trust Co. v. Wade, 269 Ky. 89, 106 S.W.2d 74, 78; Barker v. First Nat. Bank of Birmingham, D.C., 20 F.Supp. 185, 190.

This court has definitely approved like principles in First Nat. Bank of Birmingham v. Love et al., 232 Ala. 327, 336, 167 So. 703, and First National Bank v. Weaver, 225 Ala. 160, 142 So. 420, 88 A.L.R. 201. See, also, Elmore et al. v. Cunninghame, 208 Ala. 15, 93 So. 814; Johnson v. Holifield, 82 Ala. 123, 2 So. 753.

▮ That equity will not, in the name of equity, grant relief which is inequitable and unwise is an elemental principle. Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159.

The suggestion that depressions are recurrent and should be anticipated by trustees, if written into law, would set up a different standard than observed by prudent and wise investors of their own funds. If the investment world should thus take counsel of fear, an abiding want of confidence would prevail tending to a continuous depression.

▮ The trustee should safeguard his investments, like other prudent investors, by taking note of the normal fluctuations in the value of real estate, or any other cause of probable depreciation of the particular property taken as security, by adequate margins of value or otherwise. But to be held responsible for the consequences of the late depression, of which judicial knowledge is taken, is another matter.

The reasons assigned for condemning participations in this case are those applicable to all participating loans. The fact of possible foreclosure, and beneficial ownership in common in unequal interests, is not peculiar to this case. The authorities above deem this fact not of such moment as to put a ban on such investments, provided the collection of the loan, by foreclosure or otherwise, continues in the hands of the trustee, acting for all. This is a prime factor.

Whether a prudent investor would buy a small undivided interest in real estate with divided management is not the exact situation. More aptly, the inquiry would be whether a prudent investor would join with others in making a loan, himself being made the trustee, with full power to act for all. The advantages of participating loans are everywhere treated as most desirable and beneficial in handling small trusts.

To obtain safe income-bearing investments of sums too small to obtain advantageous separate loans, gave birth to the participation investment.

Our conclusion is the losses of complainants resulted from economic conditions, beyond the control of the trustee, not to be anticipated by prudent and experienced investors.

We find no such dereliction on the part of the trustee as, under the great weight of authority and sound reason, would justify the charging of these losses, against the trustee.

The future management of the properties calls for full fidelity in recouping or minimizing the losses.

The decree of the Circuit Court is reversed, and one here rendered dismissing the bill.

The costs of suit, including costs of appeal, will be taxed against appellees, paid by the trustee, and charged to the trust estate.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.