ARTHUR J. PARKER, administrator, *vs.* THISTLE LLOYD & others.

Bristol. October 28, 1946. — March 6, 1947.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Trust,* Constructive trust. *Executor and Administrator,* Misfeasance. *Personal Property,* Life estate. *Equity Jurisdiction,* Laches, Accounting. *Laches.*

A constructive trust arose where the executor of a will, who was husband of the testatrix, made a gift of residuary property of the estate in violation of provisions of the will that such residue should be given to the husband "to be used by him during his lifetime in such manner as he shall deem necessary and proper for his comfortable support" and that after his death such portion of the residue "as remains, if any," should be given to a nephew; and, after the death of the husband, the recipient of such gift was ordered to make restitution to the estate of the entire amount of the gift although he had received it in ignorance of the wrong and had used a part thereof toward payment of the pur-

chase price of real estate which he would not have bought but for the gift; and he was enjoined from disposing of such real estate until he had made full restitution or until further order of court.

The mere fact, that one entitled to an estate in remainder in personal estate of a testatrix following a life estate given to her husband, who was executor of the will, failed to take steps to see that the estate was properly administered during thirteen years elapsing between the death of the testatrix and the death of the executor-husband, although he had been amply warned of a hostile attitude toward him on the part of the executor-husband, was no defence to a suit in equity for restitution of funds disbursed by the executor-husband in violation of the provisions of the will, promptly brought by the remainderman as administrator with the will annexed of goods of the testatrix not already administered when he was appointed as such after the husband's death.

Equity did not have jurisdiction of a petition in a Probate Court, brought after the death of an executor by the administrator with the will annexed of goods not already administered of an estate which had been defrauded by the executor, to reach in the hands of the respondent property given to him by the executor but not traceable as coming from the estate; relief should be sought in connection with the accounting in behalf of the executor on the probate side of the court.

PETITION, filed in the Probate Court for the county of Bristol on June 16, 1944.

The case was heard by *Hitch,* J.

*C. G. Willard,* for the petitioner.

*M. H. T. McGregor,* (*F. A. Tracy* & *J. M. McGregor* with her,) for the respondent Lloyd.

*T. T. Tweedy,* for the respondents Craw and Leonard, submitted briefs.

DOLAN, J.   This petition in equity is brought by the administrator with the will annexed of the goods not administered of the estate of Matilda J. Leonard, late of Taunton, to recover certain personal property consisting of bank deposits, alleged to be assets of her estate, and for other relief.   The evidence is reported.

Material facts may be summed up as follows: Matilda J. Leonard, hereinafter referred to as the testatrix, was the wife of Horace B. Leonard, who survived her.   She died on September 17, 1930.   By her will she gave the residue of her estate to Horace "to be used by him during his lifetime in such manner as he shall deem necessary and proper for his comfortable support."   She further provided as follows: "If

my said husband does not survive me I bequeath the said rest and residue to my nephew Arthur J. Parker.[1] . . . If my said husband survives me then upon decease I bequeath to my said nephew such portion of my personal estate as remains, if any, of the said rest and residue herein above bequeathed to my husband." The testatrix named Horace as executor of her will, requesting that no surety be required upon his official bond. Horace was appointed and duly qualified as executor on October 10, 1930. No inventory of the estate of the testatrix was ever filed by him in the Probate Court, nor any account of his doings as executor. He died on September 6, 1943, leaving an instrument purporting to be his will which was filed in the Probate Court on October 1, 1943; a petition for its probate was filed on April 15, 1944.[2] He had been actively engaged in business until a short time before his death. The petition of J. Howard O'Keefe for leave to intervene as a party respondent in his capacity as administrator of the estate of Horace was allowed by the judge. It was stated in the petition that his appointment as administrator was made on May 25, 1945. At the time of the appointment of Horace as executor of the will of the testatrix, there were deposits in banks standing in the name of the testatrix, totaling $26,991.93. Horace then had bank accounts in his individual capacity aggregating from $22,000 to $24,000. At the time of his death none of the savings bank deposits left by the testatrix remained in her name, and there were no assets of any kind remaining in the name of Horace other than in joint account with one or another of the respondents. We will consider first the bank deposits standing in the name of the testatrix at the time of her death.

1. At the time of the death of the testatrix there was standing in her name in the Plymouth Five Cents Savings Bank a savings account (No. 8556) in the sum of $2,396.38.

---

[1] The husband, who was executor of the will, died on September 6, 1943. Parker was then appointed administrator with the will annexed of the goods not administered of the testatrix, and brought this petition on June 16, 1944.

[2] The widow of Horace appeared in objection to the probate of that instrument. It does not appear what disposition was made of the petition for its probate.

That account was withdrawn by Horace, as executor of her will, on August 10, 1936. On the same day he opened a joint account (No. D45711) in the same bank in the amount of $2,396.38 in his name and that of the respondent Hazel E. Craw, his granddaughter. Until his death the dividends on that account were remitted to him by check. On September 11, 1943, Mrs. Craw withdrew that account, still in the sum of $2,396.38, and deposited that sum in the Bristol County Savings Bank in her name and that of her husband in joint account. None of her husband's money was "mingled with that money." Mrs. Craw later withdrew $1,000 from that account, and used the sum withdrawn in the purchase of a house, title to which was taken in her name and that of her husband. No other "down payment [was] made on the house except that $1,000." Mrs. Craw concedes in effect that the balance of $1,396.38 in that account belongs to the estate of the testatrix, but as to the $1,000 withdrawn by her relies upon the decree entered by the judge in which he ordered the Bristol County Savings Bank to pay the balance of $1,396.38 to the petitioner but made no order that Mrs. Craw should pay to the petitioner the sum of $1,000 withdrawn by her, stating that she was innocent throughout, that she had changed her position in good faith by investing the $1,000 withdrawn by her in a home, and that it would be inequitable to require her to pay that sum to the petitioner for the same reasons as those recited in 2 B below.

2 A. At the time of her death (September 17, 1930) the testatrix had an account (No. 11225) in the East Bridgewater Savings Bank in the amount of $1,962.20. On July 11, 1935, Horace, as executor of her will, withdrew that account (in the same sum, having received the dividends thereon in the meantime), and opened a joint account (No. 19262) on the same day, in the same bank and same sum, in his own name and that of the respondent Thistle Lloyd, his granddaughter. Horace received the dividends on that account until his death (September 6, 1943). On September 23, 1943, Mrs. Lloyd drew $150 from that account for her own use. In the decree entered by the judge he ordered the respondent

East Bridgewater Savings Bank to pay the balance in that account of $1,812.20 and accumulations of interest to the petitioner, but made no order concerning the $150 that had been withdrawn by Mrs. Lloyd (see 2 B below).

2 B.   At the time of her death the testatrix had two accounts in the Bridgewater Savings Bank, one (No. 1806) in the amount of $2,975.60, and another (No. 2270) in the amount of $2,000.   These two accounts totaled $4,975.60. On November 5, 1930, Horace, as executor of her will, withdrew from the first account $3,049.98. [1]   On July 11, 1935, as executor, he withdrew the total of $2,000 from the second account.   He had received the dividends in the meantime from that account.   On the same day he opened a joint account, in the same bank and same sum, in his name and that of Mrs. Lloyd.   At the time of her death the testatrix had a deposit in the Bristol County Savings Bank of $4,868.21.   On October 17, 1934, Horace, as executor, withdrew therefrom $4,265.40, the then balance of that account, and deposited that sum in the same bank in his name as trustee for Mrs. Lloyd.   On October 6, 1936, he withdrew that account, which then amounted to $4,265.40, and deposited that sum (the identical amount that he had withdrawn from the deposit of the testatrix in the Bristol County Savings Bank) in the joint account with Mrs. Lloyd previously opened by him in the Bridgewater Savings Bank, making the total of that deposit $6,265.40.   On October 1, 1943, interest in the sum of $62.65 had been credited to the account, making a total of $6,328.05.   On October 5, 1943, Mrs. Lloyd withdrew from the account $4,265.40 and the interest of October 1, 1943, $62.65, a total of $4,328.05. At the time of the hearing the balance in this account was $2,040.20 plus accumulated interest.   Mrs. Lloyd testified that, of the amounts withdrawn by her from the account under consideration, $3,850 was used by her to purchase a house at 324 Auburn Street, Whitman, in the joint names of her husband and herself, and the balance for rent, taxes

---

[1] Before this withdrawal and after the death of the testatrix, this account had been increased by the addition of interest in the sum of $74.38, making the amount in the account $3,049.98 when this withdrawal occurred.

and water bills that she "had to pay extra." In the decree entered by the judge he ordered $2,040.20 to be paid by the respondent Bridgewater Savings Bank together with accumulated interest thereon to the petitioner, but made no order for payment of the sum of $4,328.05 by Mrs. Lloyd to the petitioner. Overlooking the item of interest ($62.65) withdrawn by her, Mrs. Lloyd makes no contention that the sum of $4,265.40 withdrawn by her is not properly traceable to the estate of the testatrix, and concedes that the balance in the account belongs to that estate. She relies, however, upon the decree entered by the judge and the findings therein that she was "innocent of the fact that any of the money came from Matilda's estate and . . . [was] justified in believing that Horace had a right to give it to" her, that she had changed her position and made expenditures from the accounts that she would not have made if it had not been for the gifts, and that "it would be inequitable to require her to pay it back, particularly as the whole situation stems from the neglect of Mr. Parker to take ordinary precautions of seeing that Matilda's estate was properly administered." It was on the same grounds that the judge ruled that it would be inequitable to require Mrs. Craw to pay to the petitioner the $1,000 that she had withdrawn from the account in her possession that was assets of the estate of the testatrix.

3. At the time of the death of the testatrix she had two accounts in the Brockton Savings Bank, one (No. 3250) in the sum of $3,157.64, the other (No. 9856) in the amount of $2,000, a total of $5,157.64. Horace, as executor, withdrew these accounts on May 20, 1935. On the same day he withdrew from an account standing in his own name $3,780.-51. On the same day he opened a joint account with Mrs. Lloyd in the same bank in the sum of $8,938.15. Interest was credited to this account on October 15, 1943, and on April 15, 1944, totaling $157.08, making a total of $9,095.23. In the decree entered by the judge he ordered the bank to pay to the petitioner out of that deposit $5,-157.64, together with accumulations of interest thereon, as assets of the estate of the testatrix. There is nothing in the

evidence to show that the balance of that deposit was assets of the estate of the testatrix.

4. At the time of the death of the testatrix she had an account in the Taunton Savings Bank (No. 14447) in the amount of $4,933.97. No contention is made that this deposit was not withdrawn by Horace, as executor, and placed in joint account in the same bank, in his name and that of the respondent Joshua C. Leonard, his son, together with other sums which cannot be traced to any assets of the testatrix. On July 5, 1944, Joshua repaid to the petitioner from that account, then in joint account in his name and that of his daughter O. Eloise Leonard, $4,933.97, the amount of the testatrix's deposit in the same bank at the time of her death. The petitioner does not contend that any further sum is due from Joshua on account of the original deposit of the testatrix, and the judge does not refer in the decree entered by him to the account just considered.

5. At the time of her death the testatrix had an account in the Bristol County Trust Company (No. 1534) in the amount of $2,697.93. This was closed by Horace, as executor, on January 11, 1934. The evidence is insufficient to support a finding that the proceeds of that deposit are traceable to any of the respondents.

6. In September, 1933, Horace remarried and made one or more deposits in joint account in his name and that of his wife, the respondent Lillian M. Leonard. These deposits are not traceable to assets of the estate of the testatrix.

The judge ordered and decreed as follows: ". . . after hearing and consideration the court doth order and decree that the funds in the account No. 19262 in the name of Thistle Lloyd in the East Bridgewater Savings Bank amounting to $1,812.20 and accumulated interest thereon now in said bank, belong to the estate of Matilda J. Leonard, and said bank is ordered to pay the same to the petitioner; that the funds in account No. 22492 in the name of Thistle Lloyd in the Bridgewater Savings Bank amounting to $2,040.20 and accumulated interest thereon now in said bank, belong to the estate of Matilda J. Leonard, and said

bank is ordered to pay the same to the petitioner; of the funds in account No. 116864 now in the name of Thistle Lloyd in the Brockton Savings Bank, $5,157.64 and accumulated interest thereon now in said bank, belongs to the estate of Matilda J. Leonard, and said bank is ordered to pay such sum to the petitioner; funds in the account in the Bristol County Savings Bank in the name of Hazel E. Craw and her husband amounting to $1,396.38 and accumulated interest thereon now in said bank, belong to the estate of Matilda J. Leonard, and said bank is ordered to pay the same to the petitioner with the consent of Hazel E. Craw, a joint depositor. It is further decreed that the said Thistle Lloyd and Hazel E. Craw sign all orders and transfers necessary to transfer the funds in the accounts aforesaid to the petitioner. It is further ordered and decreed that the petition be dismissed as to J. Clifford Leonard and Lillian M. Leonard, and as to the intervening petition of J. Howard O'Keefe, administrator of the estate of Horace R. Leonard, permitted to join as a respondent, it is denied." [1]

The petitioner contends in part that the judge erred in not ordering the respondents Mrs. Craw and Mrs. Lloyd to pay to him the amounts withdrawn by them from the deposits in their names in joint account with Horace, which were traced from assets of the estate of the testatrix, and in not enjoining them from disposing of the real estate in which the amounts so withdrawn had been invested.

The respondents Mrs. Craw and Mrs. Lloyd, in so far as the petitioner seeks to recover from them the amounts withdrawn by them from the respective deposits in question traceable to assets of the estate of the testatrix, rest upon the findings and rulings of the judge set forth in the decree entered by him, which have been described above. On all the evidence we are unable to concur in the ruling of the judge that it would be inequitable to require them to repay those amounts because they had changed their positions, and particularly because the whole situation "stemmed

---

[1] We discover no prayers in the petition of the administrator for leave to intervene, which was granted, except those that he be allowed to intervene to join issue, and to be heard on any matters in which the estate of Horace may be interested.

from the negligence of Mr. Parker" in failing to take steps to see that the estate of the testatrix was being properly administered by Horace. The evidence relied upon by these respondents to support the finding of negligence on the part of Mr. Parker, that is, laches, would have justified the judge in finding that about a week before her death the testatrix sent for Mr. Parker and said to him, "Arthur, I am leaving all my money to you"; that her husband, Horace, was present, and said, "The hell she will";[1] that two weeks after the death of the testatrix Mr. Parker went "to the house" to see Horace, and when he went to the door Horace turned the lock in the door and said "get out," and Mr. Parker "went"; and that, notwithstanding, Mr. Parker took no steps to require Horace to file an inventory of the estate of the testatrix and to render accounts of his conduct thereof from time to time.

The authority given to Horace by the will of the testatrix to use the residue of her estate during his lifetime "in such manner as he shall deem necessary and proper for his comfortable support" did not authorize him to dispose of the property so bequeathed by gifts to others. *Griffin* v. *Kitchen*, 225 Mass. 331, 334. "He was not empowered to part with the property for every purpose, nor was he permitted to convey the estate for the comfort of any one except himself. . . . the testatrix did not intend that her husband should have this right to dispose of it merely for his own peace of mind, or for the comfort and support of another person." *Homans* v. *Foster*, 232 Mass. 4, 6. *Stocker* v. *Foster*, 178 Mass. 591. *Allen* v. *Hunt*, 213 Mass. 276. *Kemp* v. *Kemp*, 223 Mass. 32. Properly none of the respondents contends otherwise. Having the right under the terms of the will of the testatrix to use the property in question for the limited purpose of his comfortable support, the intervention of a trustee was not required. *Holmes* v. *Dunning*, 260 Mass. 250, 254, and cases cited. But nevertheless, in his dealing with the property, the relation of Horace to it and to the possible remainderman, Parker, was

---

[1] The will of the testatrix was dated July 7, 1920. She died on September 17, 1930.

fiduciary in character, in essence one of trust. The un-
authorized disposition by Horace of assets of the estate of
the testatrix by gifts to the respondents Craw and Lloyd
was a breach of trust, and it is settled that a transferee of
one who receives trust property and who takes without con-
sideration, however innocently otherwise, has no greater
right than the one who in breach of trust so transfers the
property, and "becomes a constructive trustee liable to re-
convey the property or, if unable to do so, to pay the owner
the proceeds or to compensate" those entitled to it for its
value. *Berry* v. *Kyes*, 304 Mass. 56, 59. *Locke* v. *Old Colony
Trust Co.* 289 Mass. 245, 253. *Banks* v. *Everett National
Bank*, 305 Mass. 178, 182. *Tierney* v. *Coolidge*, 308 Mass.
255, 259. On all the evidence we are of opinion that the
situation here presented did not stem, as the judge found,
from any negligence of Parker but rather that it stemmed
from the unauthorized and improper conduct of Horace
before described. As we have already noted, under the
authority conferred upon Horace he was entitled to the pos-
session of the assets of the testatrix in question without the
intervention of a trustee, and we take the view that the
mere fact that Parker knew that Horace was hostile to him
did not require him to intrude himself into the administra-
tion of the estate of the testatrix, which had been committed
to Horace, and that Parker could assume rightly that Horace
would administer the estate properly within the powers con-
ferred upon him. Horace died on September 6, 1943; the
present petition was filed seasonably on June 16, 1944. It
follows from what we have said that it was error to exonerate
the respondents Craw and Lloyd from payment to the peti-
tioner of those portions of the estate of the testatrix that
had been withdrawn by them from the depositaries into
which they had been traced in their respective names.

We do not sustain the further contention of the petitioner
that the judge should have ordered the respondents Craw,
Lloyd, Joshua C. Leonard and Lillian M. Leonard to pay
to him such portions of the deposits that came into their
hands by gifts from Horace, into which assets of the estate
of the testatrix have not been traced, as will suffice to make

up the deficiency between the amount of the bank deposits of the testatrix at her death and the amount recoverable as assets of her estate. That is a matter for accounting on the probate side of the court below by the administrator of the estate of Horace of the doings of the latter as executor of the will of the testatrix. *Colby* v. *Stearns*, 270 Mass. 461, 462–463. And a probate accounting is not the subject of equity jurisdiction. *Foster* v. *Bailey*, 157 Mass. 160. *Green* v. *Gaskill*, 175 Mass. 265, 269, and cases cited. *Allen* v. *Hunt*, 213 Mass. 276. *Storer* v. *Coggan*, 260 Mass. 515, 517. See also *Locke* v. *Old Colony Trust Co.* 289 Mass. 245.

The motions of the petitioner for costs and expenses, and that of the respondent Brockton Savings Bank for costs and expenses are not granted.

The decree entered in the Probate Court is to be modified by also ordering that the respondent Hazel E. Craw pay to the petitioner the sum of $1,000, and that the respondent Thistle Lloyd pay to the petitioner the sum of $4,478.05, and enjoining each of them from disposing of the respective parcels of real estate in which they invested those sums out of funds that were assets of the estate of the testatrix until the sums ordered to be paid by them have been paid or until the further order of the court. As so modified the decree entered in the Probate Court is

*Affirmed.*