ROSE HERMAN vs. STUART S. EDINGTON & another.

Suffolk.   January 4, 1954. — April 6, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILLIAMS, & COUNIHAN, JJ.

*Trust,* Express trust: what constitutes; Trust of foreign land; Con-
structive trust. *Frauds, Statute of. Jurisdiction,* Foreign land. *Con-
flict of Laws. Limitations, Statute of. Equity Pleading and Practice,*
Appeal.

Whether there had been an effective declaration of an express trust for
the benefit of another by the holder of the record title to land in
Florida was to be determined by the law of that State.  [314]
A suit in equity could be maintained in Massachusetts to establish an
interest of the plaintiff under the law of Florida in land located there
and to secure a decree in personam against the defendant accordingly
where it appeared that both parties were before the court and the
defendant was domiciled here.  [314]
Delivery to a plaintiff by the record owner of two lots of land in Florida
of the deed by which the owner had acquired title enclosed in an
envelope upon which he had written at one time "These two lots . . .
owned by me are now the property of . . . [the plaintiff] in payment
of money advanced by her," followed by his initials, and at another
time "These lots are still recorded in my name but in actual fact are
owned by . . . [the plaintiff]," followed by his initials, in the cir-
cumstances was a sufficient declaration by the owner of an express
trust of the lots for the plaintiff "manifested and proved by some
writing" as required by the Florida statute of frauds.  [314–315]
Under the law of Florida, the statute of limitations on the commence-
ment of a proceeding to enforce a repudiated trust of land does not
commence to run until the repudiation has come to the attention of
the beneficiary of the trust.  [316]
A devisee of real estate subject at the time of his testator's death to a
valid express trust declared by the testator became himself a trustee
of the real estate.  [316]
On an appeal by one party only from the final decree in a suit in equity,
the propriety of provisions of the decree favorable to the appellant is
not open in this court.  [316]

BILL IN EQUITY, filed in the Superior Court on May 16,
1952.

The suit was heard by *O'Connell, J.*

*Francis T. Leahy,* for the defendant Stuart S. Edington.

*Clarence A. Barnes,* (*Eleanor A. Dwyer* with him,) for the plaintiff.

RONAN, J. This is an appeal by the defendant Stuart S. Edington from a final decree ordering him to pay to the plaintiff a certain sum representing the proceeds from the sale by him of two lots of land in Florida. The plaintiff alleges that one Frederick R. Edington gave to her the deeds of said lots enclosed in an envelope upon which he had indorsed that the lots were her property in payment of an indebtedness although he was the record owner; that the defendant Stuart S. Edington was the adopted son of Frederick; and that after his father's death he acknowledged that the plaintiff was the owner of the lots and that he would arrange to have the title transferred to the plaintiff but that, instead of doing so and in violation of the trust and confidence imposed in him by the plaintiff, he had the title transferred to himself and subsequently sold the lots. Besides an appeal from the final decree the suit is here on an appeal from an interlocutory decree overruling the demurrer.

We have a transcript of the evidence, together with the exhibits. The judge made a report of the material facts. We have examined the evidence. All questions of fact, law, and discretion are open for our decision. We can find facts in addition to those found by the judge and we can find facts contrary to those found by him if we are convinced that his findings are plainly wrong. *MacDonald* v. *Gough,* 326 Mass. 93, 96. *Goodless* v. *Marshall,* 330 Mass. 214, 217.

We now summarize the facts found by us, accepting those made by the judge and not shown to be plainly wrong. The defendants are Stuart S. Edington and his wife, Mildred G. Edington. He is the adopted son of Frederick R. Edington, hereinafter called Edington. Edington for many years prior to his retirement in 1945 was engaged in various capacities in the wool business. His home was in Boston. He met the plaintiff in 1919, shortly after she was divorced from her husband, and they soon became intimate. He gave her weekly allowances commencing in 1922 and con-

tinuing during the short time she remained in Boston be-
fore she left for New York. He continued these allowances
when she took up her residence in New York. When he
retired in 1945 they lived together as husband and wife in
New York, and he spent his last three or four winters with
her in Florida where he died on March 7, 1950. Edington
was married during all the time in question until he was
divorced in 1938. The plaintiff does not appear to have
had any source of income other than the funds which she
received from Edington. At times, at his request, she made
loans to him aggregating several thousand dollars. Edington
gave the plaintiff an envelope containing the deed or deeds
by which he acquired title to two lots of land referred to as
lots 15 and 16. He wrote at two different times upon the
envelope the following legends: "These two lots in Daytona
Beach owned by me are now the property of Mrs. R. Herman
in payment of money advanced by her, and not returned by
me. F. R. E." "2/14/43. These lots are still recorded
in my name but in actual fact are owned by Mrs. R. Herman.
F. R. E." She accepted the lots in payment of his indebted-
ness and they regarded the lots as belonging to her, although
he never transferred the record title to her. The lots were,
as shown by photographs, vacant. They produced no in-
come and Edington continued to pay the taxes on them
up to the time of his death just as he had done before he
delivered the envelope and its contents to her.

Stuart Edington, hereinafter called Stuart, never met the
plaintiff until after his father's death. Shortly after the
funeral she met him in Boston and gave him the envelope
with its contents, telling him the two lots in question be-
longed to her. He promised to have the title transferred
to her. Subsequently, he sent her the tax bill for 1950 and
she sent him the money to pay it. He delayed on one ground
or another in having the title transferred to her and finally
refused to recognize that she had any interest in the land.

Edington died testate. He nominated a Boston bank as
executor and left his property to those entitled to receive
it under our law governing descent and distribution. His

will was admitted to probate in this Commonwealth and ancillary administration was taken out in Florida. A woman unsuccessfully attempted to prove in hearings held in Boston that she was the daughter of Edington and his wife. The plaintiff took no part in any of these proceedings. The son acquired title through the ancillary administration in Florida, and sold the land for $9,500, $7,000 of which he gave to his wife, the other defendant.

The case seems to have been tried mainly on one aspect of the bill which was framed upon the theory that Stuart, in repudiating his promise to arrange to have the title to the lots transferred to the plaintiff and instead taking the title to them and selling them, perpetrated a fraud upon her and so himself became a trustee and liable to account for the proceeds to her. The bill, however, could not be maintained solely on the fraudulent conduct of Stuart, because the latter acquired the property as devisee under his father's will and he was not unjustly enriched at the plaintiff's expense unless, at the time of his father's death, the plaintiff owned the beneficial interests in these lots and she could not maintain a suit against Stuart unless she proved that she lost her interest in the land because of his fraud. The allegations of the bill concerning the conduct of Stuart must be read with the previous allegation setting forth the dealings of the plaintiff and Edington concerning the land. A court of equity may retain jurisdiction for any purpose within the scope of the bill. *Baker* v. *Langley,* 247 Mass. 127. *Killoren* v. *Hernan,* 303 Mass. 93, 99–100. The fundamental issue in this case is whether at the time of Edington's death these lots were impressed with a trust in favor of the plaintiff.

Before deciding that issue, we must pause to answer the contention of Stuart that our courts lack jurisdiction to determine what interest, if any, the plaintiff had in land located in another State. Edington was domiciled in this Commonwealth during the entire period of his association with the plaintiff, including the times when he dealt with the plaintiff relative to the land and when he died. He

provided in his will that his estate should be administered according to the law of this Commonwealth. All the parties in interest are before the court. Both defendants are domiciled here where they can be reached and given their day in court. While the question whether the plaintiff acquired any beneficial interest in the land in Florida must be decided according to the law of that State, if her right is established we can order the defendants to convey the land to her and, if sold, to account for the proceeds. A decree in personam against Stuart is all that the plaintiff now seeks. Our courts have jurisdiction of the suit. *Beardsley* v. *Hall*, 291 Mass. 411, 417. *Hill* v. *Peterson*, 323 Mass. 384, 387, and cases cited. Restatement: Conflict of Laws, § 239, comment b. 15 A. L. R. (2d) 610.

The delivery of the envelope and its contents to the plaintiff in the attending circumstances was a sufficient declaration of an express trust in the land. The statements on the envelope were in the handwriting of Edington, and were signed in both instances with his initials. *Irving* v. *Goodimate Co.* 320 Mass. 454, 459. The plaintiff was named as the one to whom he was then transferring the equitable interest in the land. She was given a present interest in the land. The land was identified by the contents of the envelope notwithstanding the conflict in evidence as to what lots were mentioned in the deeds. *Stuart* v. *Sargent*, 283 Mass. 536, 541. Edington drew a distinction between the rights conveyed to the plaintiff and the record title to the land. The property was "now the property of Mrs. R. Herman" as written by him although the record title stood in his name. In the next place, the transfer of the equitable interest was for the consideration which he expressed on the envelope. The transfer was not a gift but was made in payment of a debt.

Neither State requires any particular form of words to create a trust in realty. *Sawyer* v. *Cook*, 188 Mass. 163, 165. *Rugo* v. *Rugo*, 325 Mass. 612, 616. In *Reid* v. *Barry*, 93 Fla. 849, 873, it was said, "whether one [a trust] exists is to be ascertained from the intention of the parties as mani-

fested by the words used and the circumstances of the particular case." It was said in *Walker* v. *Close*, 98 Fla. 1103, 1113, that "There is no prescribed form for the declaration of a trust; whatever evinces the intention of the party that the property of which he is the legal owner shall beneficially be another's is sufficient." To the same effect is *Voorhies* v. *Blood*, 127 Fla. 337.

The statutes of Florida (1951 ed.) provide in § 689.05 that declarations and creations of trust in land "shall be manifested and proved by some writing." Those words are the equivalent of the words of our own statute, G. L. (Ter. Ed.) c. 203, § 1, that no trusts concerning land except those arising from implication of law "shall be created or declared unless by a written instrument." The words "created or declared" are equivalent to the words "manifested and proved" appearing in the Florida statute. *Urann* v. *Coates*, 109 Mass. 581, 585. *Simpson* v. *Henry N. Clark Co.* 316 Mass. 118, 121.

We think the delivery to the plaintiff of the envelope with the written statements thereon and the deed or deeds therein in the light of the attending circumstances satisfied the requirements of the statute of frauds and indicate the intention of Edington to create a trust and to impose upon himself the duties of a trustee for her benefit and to transfer the land to her whenever she demanded it. It would be hard to imagine the existence of any other intent upon his part. Restatement: Trusts, § 46. Scott on Trusts, § 46.

We think that as between the plaintiff and Edington the recital on the envelope, when construed with the accompanying deed or deeds, was a sufficient declaration of an express trust under our decisions. *Barrell* v. *Joy*, 16 Mass. 221. *Urann* v. *Coates*, 109 Mass. 581. *Faxon* v. *Folvey*, 110 Mass. 392. *Stratton* v. *Edwards*, 174 Mass. 374, 376–377. *Sawyer* v. *Cook*, 188 Mass. 163, 165. *Cohen* v. *Newton Savings Bank*, 320 Mass. 90, 93. See *Howison* v. *Baird*, 40 So. 94, *S. C.* 145 Ala. 683; *Matter of Brown*, 252 N. Y. 366; and under the Florida decisions, *Lines* v. *Darden*, 5 Fla. 51, 72; *Byrne Realty Co.* v. *South Florida Farms Co.* 81

Fla. 805; *Reid* v. *Barry*, 93 Fla. 849, 870–871; *Voorhies* v. *Blood*, 127 Fla. 337.

Our attention has been directed to certain Florida statutes of limitations. All of them have been examined. The Florida decisions appear to be in accord with the general rule that a statute of limitation does not commence to run until the repudiation of the trust has come to the attention of the beneficiary. *Stuck* v. *Schumm*, 290 Mass. 159, 163–166. *Akin* v. *Warner*, 318 Mass. 669, 676. *Browder* v. *DaCosta*, 91 Fla. 1. *Walker* v. *Landress*, 111 Fla. 356. *Sewell* v. *Sewell Properties, Inc.* 159 Fla. 570.

Stuart had no greater rights in the lots than did his father at the time of his death. He succeeded to whatever rights his father had which were subject to the beneficial interests of the plaintiff. Stuart was not a purchaser for value. One who takes trust property without consideration and either with or without notice becomes a trustee himself, *Otis* v. *Otis*, 167 Mass. 245; *Berry* v. *Kyes*, 304 Mass. 56, 59; *Bodman* v. *Martha's Vineyard National Bank*, 330 Mass. 125, 129–130, and must restore the property or, if sold, account for its value. *Donnelly* v. *Alden*, 229 Mass. 109. *Epstein* v. *Epstein*, 287 Mass. 248. *Parker* v. *Lloyd*, 321 Mass. 126. *Old Colony Trust Co.* v. *Wood*, 321 Mass. 519. *Glidden* v. *Gutelius*, 96 Fla. 834. *Sewell* v. *Sewell Properties, Inc.* 159 Fla. 570.

The propriety of charging Stuart with only $8,000 and of dismissing the bill against his wife is not open on this appeal as the plaintiff took no appeal. *Turgeon* v. *Turgeon*, 330 Mass. 402.

Stuart ought not to have been ordered to reimburse the plaintiff for the 1950 taxes which she paid. The final decree must be modified by omitting this provision and, as modified and bringing the figures down to date, is affirmed and so is the interlocutory decree overruling the demurrer.

*So ordered.*