UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
 
No. 94-2290

MARK A. MARCUCCI,

Plaintiff, Appellee,

v.

MARION J. HARDY,

Defendant, Appellant.

 
No. 95-1005
MARK A. MARCUCCI,

Plaintiff, Appellant,

v.

MARION J. HARDY,

Defendant, Appellee.

 

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Martin F. Loughlin, Senior U.S. District Judge] 

 

Selya, Cyr and Boudin,

Circuit Judges. 

 

John R. Harrington, with whom David F. Conley and Sulloway & 
Hollis were on brief for defendant. 
Charles A. Szypszak, with whom Laura E. Tobin and Orr and Reno, 
P.A. were on brief for plaintiff. 

 

September 20, 1995
 

CYR, Circuit Judge. Mark A. Marcucci initiated this CYR, Circuit Judge. 

diversity action in the United States District Court for the

District of New Hampshire in December 1993, alleging that his

daughter, Marion J. Hardy, had appropriated to her own use

approximately $550,000 held in trust for Marcucci. Following a

bench trial, the district court imposed a constructive trust on

the proceeds Hardy received from the sale of the Marcucci home-

stead and awarded $36,097.54 in attorney fees to Marcucci. Hardy

appealed. Marcucci cross-appealed from a district court order

rejecting his claims to joint accounts managed by Hardy. We

affirm the district court judgment, in part, and reverse in part.

I I

BACKGROUND BACKGROUND 

In the late 1950s, Marcucci, owner of a plumbing and

fuel oil business, conveyed the Marcucci "family homestead" in

Waterbury, Connecticut, and other assets, to his wife, Angela, in

order to insulate their holdings from potential business liabili-

ty claims. In the early 1980s, as Marcucci and Angela advanced

in years, they caused the name of their daughter, Marion J.

Hardy, to be added to their joint bank and investment accounts.

Aside from an $18,000 deposit by Hardy in 1987, all funds in

these joint accounts derived from Marcucci. 

Although Marcucci, Angela, and Hardy continued to be

listed as "joint owners," Hardy took charge of most disburse-

ments. The Marcuccis retained the ability to withdraw funds from

2

the joint accounts, but rarely did so. From time to time, Angela

told Hardy, in Marcucci's presence, that some of the monies in

these joint accounts were intended for Hardy's personal use.

When Angela died in October 1988, the joint accounts contained

$364,663. 

Angela left $50,000 in cash to Constance Waterman, her

other daughter, but the Marcucci homestead and the residue of her

estate went to Hardy. Hardy invited Marcucci to live with her,

first in Colorado and later in her New Hampshire home. All of

Marcucci's expenses were defrayed by Hardy with his social

security income and with funds disbursed from the joint accounts.

The DeFeo family, Hardy's neighbors, helped care for Marcucci

while Hardy was away from New Hampshire for approximately eigh-

teen months during Operation Desert Storm and while performing

her other military duties. 

In the summer of 1990, prior to the final probate of

Angela's will, Marcucci learned that the joint account balances

were substantially less than $364,663. At about this time,

Constance told Marcucci that Hardy was claiming the right to

withdraw funds from the joint accounts. Although Marcucci

commented at the time that he would be without substantial assets

unless he contested Angela's will, he decided against doing so

after obtaining legal advice, and the will became final in August

1990.1 
 

1Marcucci admits he knew the homestead had been left to
Hardy by Angela. An April 1989 letter, which Hardy wrote for
Marcucci and signed "Dad," stated that the homestead belonged to

3

Meanwhile, in July 1990, Hardy had created a revocable

trust ("Marcucci Family Trust"), with $173,801 from the joint

accounts, retaining sole discretion to make inter vivos distribu- 

tions to Marcucci, the only beneficiary. She showed the trust

instrument to Marcucci and, with his encouragement, loaned

$150,000 of the trust corpus to the DeFeo family, to alleviate

their serious financial problems. Six weeks later the DeFeos

filed petitions in bankruptcy and the $150,000 loan is presumed

uncollectible. No trust distributions were either promised or

made to Marcucci. 

By November 1992, the relationship between Marcucci and

Hardy had deteriorated. With assistance from Constance, Marcucci

moved to a Connecticut retirement home and Hardy refused to

contribute to his support until he returned to live with her.

Marcucci, 95 years old and virtually indigent, is unable to

afford the retirement home accommodations. In July 1993, Hardy

sold the Marcucci homestead, applying the net proceeds ($108,000)

to the mortgage on her New Hampshire home.

II II

DISCUSSION DISCUSSION 

A. The Hardy Appeal A. The Hardy Appeal 
 

Hardy. Marcucci's daughter, Constance, and her husband, advised
Marcucci that "the house and cars are [Hardy's]" and that Angela
had left everything to Hardy except for the $50,000 given to
Constance. The district court found that Marcucci knew, by the
summer of 1990, that substantial amounts had been withdrawn from
the joint accounts by Hardy, and that by September 1990 Marcucci
"believed that unless he contested his wife's will, he would have
no substantial assets." 

4

1. Constructive Trust 1. Constructive Trust 

Hardy asserts three challenges to the constructive

trust imposed on the homestead proceeds. First, she claims the

district court erred in rejecting her affirmative defenses based

on the statute of limitations and laches. Second, she argues

that Marcucci expressly withdrew his claim to the homestead

proceeds at trial. Finally, she contends that the constructive

trust ruling was either based on clearly erroneous findings of

fact or erroneous conclusions of law. 

a) Affirmative Defenses a) Affirmative Defenses 

Hardy moved for judgment on the pleadings, see Fed. R. 

Civ. P. 12(c), on the alternative grounds that the constructive

trust claim was barred by New Hampshire's three-year statute of

limitations, N.H. Rev. Stat. Ann. 508:4, I (Supp. 1994); see 

Sullivan v. Marshall, 44 A.2d 433, 434 (N.H. 1945) (claim for 

restitution against constructive trustee time-barred), or by

laches.2 The district court denied the motion on the ground

that Marcucci had no knowledge, prior to March 1993, that Hardy

had mishandled or misapplied either joint account funds or other

Marcucci assets. Although the district court opinion did not

 

2At oral argument, Hardy suggested for the first time that a
Connecticut statute of limitations applies to the constructive
trust claim. As this contention was neither raised below, nor
seasonably broached on appeal, we deem it waived. See Clauson v. 
Smith, 823 F.2d 660, 666 (1st Cir. 1987). In all events, it is 
unavailing. In diversity cases, the federal courts normally look
to the choice-of-law rules of the forum state, in this case New
Hampshire. As a general rule, New Hampshire applies its own
statute of limitations. See Keeton v. Hustler Magazine, 549 A.2d 
1187, 1191-92 (N.H. 1988). We believe it would do so here. 

5

revisit the matter, there can be no doubt that the court rejected

Hardy's affirmative defenses, as the constructive trust claim was

allowed to proceed.3 

Under N.H. Rev. Stat. Ann. 508:4, I (Supp. 1994), the

three-year limitations period commences when the "plaintiff

discovers, or in the exercise of reasonable diligence should have

discovered, the injury or its causal relationship to the act or

omission complained of." Whether a claimant discovered the

injury, or in the exercise of reasonable diligence should have

discovered it, is a question of fact. French v. R.S. Audley, 

Inc., 464 A.2d 279, 282 (N.H. 1983). Accordingly, we review for 

clear error. Reilly v. United States, 863 F.2d 149, 163 (1st 

Cir. 1988). 

There is undisputed evidence that Constance Waterman

informed Marcucci in the summer of 1990 that Hardy claimed the

right to withdraw funds from the joint accounts, and that Marcu-

cci knew that Angela had left the Marcucci homestead to Hardy.

Nevertheless, in the circumstances presented here including

the close family relationship, Marcucci's age and dependency, as

well as the nature and purpose of Marcucci's transfers of the

homestead and the joint accounts Hardy's assertion of rights

in these assets was not tantamount to knowledge on the part of
 

3Hardy contends that the failure to make express findings on
her affirmative defenses necessitates remand. See, e.g., Touch 
v. Master Unit Die Prods., Inc., 43 F.3d 754, 757-59 (1st Cir. 
1995) (finding district court decision "insufficiently clear to
enable effective appellate review"). Unlike the situation
presented in Touch, however, the import of the district court's 
factual findings in this case plainly signaled its rationale. 

6

Marcucci that his daughter was refusing to recognize and honor

his own beneficial interest in the assets. Further, Hardy's

conduct served to toll the limitations period by engendering in

Marcucci a reasonable sense of confidence which disguised the

need for any legal action. See New Hampshire Donuts v. Skipi- 

taris, 533 A.2d 351, 356 (N.H. 1987).  

For more than four years October 1988 to November

1992 Hardy took care of Marcucci in her Colorado and New

Hampshire homes. She informed him that she had established the

"Marcucci Family Trust," with Marcucci as its sole beneficiary,

and consulted with him before making the DeFeo loan from trust

monies. These actions were entirely consistent with an extant

trustee-beneficiary relationship, and, whether so intended or

not, sufficed to provide a reasonable basis for rekindling

Marcucci's confidence in Hardy, especially in light of the close

family relationship and his advanced age and highly dependent

state. Thus, the district court record clearly warrants the

conclusion that Marcucci neither knew, nor should he reasonably

have believed, that his daughter claimed outright ownership of

the Marcucci homestead. 

In July 1993, however, Hardy sold the Marcucci home-

stead and applied the proceeds toward the mortgage on her New

Hampshire residence, conduct which unequivocally announced her

open, adverse claim to the entire Marcucci homestead. Within six

months thereafter, Marcucci initiated the present action.

Accordingly, we agree with the district court that the action was

7

not time-barred, either by the New Hampshire statute of limita-

tions or laches.4 

b) Withdrawal of Homestead Claim b) Withdrawal of Homestead Claim 

During closing argument, Marcucci's trial counsel

stated: "we are not asking in this proceeding for return of the

home." Hardy frivolously contends that Marcucci thereby withdrew

his claim to the homestead proceeds. Construed in context, the 

language employed by counsel simply reflected the reality that

the homestead had been sold to a third party; thus, a claim could

only be asserted against the sale proceeds.5

c) The Merits c) The Merits 

Hardy next contends that the district court misinter-

preted New Hampshire law as permitting the imposition of a

constructive trust in these circumstances. She argues that it

was error to do so absent an express promise by Hardy to reconvey 

the homestead to Marcucci. We do not agree. There was suffi-
 

4Under the doctrine of laches, a limitations period may be
foreshortened if "unreasonable" and unexplained delay in filing
an equitable claim has prejudiced the defendant. See Jenot v. 
White Mountain Acceptance Corp., 474 A.2d 1382, 1387 (N.H. 1984); 
O'Grady v. Deery, 45 A.2d 295, 297 (N.H. 1946). The laches 
defense does not lie, however, if the defendant has "caused or
contributed" to the delay. See New Hampshire Donuts, 533 A.2d at 
356. 

5The cases cited by Hardy are totally inapposite. See 
Hoffer v. Morrow, 797 F.2d 348, 350 (7th Cir. 1986) (noting that 
a criminal defendant may waive a double jeopardy claim by plead-
ing guilty); Flannery v. Carroll, 676 F.2d 126, 132 (5th Cir. 
1982) (observing that plaintiff may waive a particular theory of
liability by choosing not to plead it); American Locomotive Co. 
v. Gyro Process Co., 185 F.2d 316, 318-19 (6th Cir. 1950) (noting 
that defendant may waive contractual right to arbitration by
failing, for seven-year period, to move for stay of judicial
proceedings to permit arbitration). 

8

cient circumstantial evidence alone to support a reasonable

inference that there had been an implicit promise to reconvey

based on the intra-family nature of the transfer from Marcucci to

his wife, Angela. See Pleakas v. Juris, 224 A.2d 74, 78-79 (N.H. 

1966) (the promise to reconvey may be inferred from the surround-

ing circumstances, including the relationship between the parties

and the potential for unjust enrichment).6 Moreover, Angela's

devise of the homestead to Hardy remained subject to the con-

structive trust impressed upon it at the time Marcucci conveyed

it to Angela.7 Angela therefore held the homestead in trust for

Marcucci, and it was devised to Hardy subject to that trust. See 

generally 4 Austin W. Scott & William F. Fratcher, The Law of 

Trusts 289.1 (4th ed. 1989) [hereinafter: Scott on Trusts] 

(noting that "[d]evisee takes subject to a trust because one who

 

6We likewise reject Hardy's contention that the homestead
was not impressed with a constructive trust when she received it
from her mother, because the reason for its conveyance to her
mother Marcucci's desire to insulate it from business liabili-
ty claims ceased when Marcucci retired. First, the premise is
dubious, since it is by no means clear that Marcucci's business
liability exposure would cease at retirement, at least as con-
cerns pre-retirement activity. Second, it seems more consonant
with the intent of the parties that once the reason for the
transfer no longer remained viable, reconveyance to Marcucci
should obtain, particularly since unjust enrichment is the core 
consideration in the constructive trust analysis. See, e.g., 
Cornwell v. Cornwell, 356 A.2d 683, 686 (N.H. 1976). 

7Hardy maintains that Marcucci subsequently released her
from any obligation to reconvey. She points to his testimony
that, "as long as [the house] was given to Marion, I say [sic]
it's okay as long as Marion's going to take care of me the rest
of my life." On the contrary, this testimony bolsters the
district court finding that Marcucci was prepared to permit Hardy
to retain title to the homestead in trust only as long as she
continued to care for him.

9

pays no value for the trust property would be unjustly enriched

at the beneficiary's expense if the trustee were permitted to

keep it"); see also Herman v. Edington, 118 N.E.2d 865, 869 

(Mass. 1954) (holding that one who takes trust property without

consideration, and either with or without notice, becomes a

trustee herself).8 The court did not abuse its discretion in

imposing a constructive trust on the homestead proceeds.

2. Attorney Fees  2. Attorney Fees 

Marcucci asserted a demand for attorney fees in the

complaint, which Hardy opposed in her answer. Hardy contends

that the district court improperly awarded attorney fees to

Marcucci since her defenses were not frivolous and she did not

litigate in bad faith. The appellate record discloses little

insight into the rationale for the district court award, nor did

Hardy request elucidation or reconsideration by the district

court. 

The district court cited to Harkeem v. Adams, 377 A.2d 

617, 619-20 (N.H. 1977), which held that unreasonable litigation

tactics which unnecessarily prolong litigation can constitute bad

faith even though the litigation position was not entirely

frivolous. See Marcucci v. Hardy, No. C-93-645-L, at 14 (D.N.H. 

 

8Hardy attempts to challenge two district court findings of
fact: (1) that the threat of liability suits was the impetus for
the transfer of the homestead from Marcucci to Angela; and (2)
the entire homestead (rather than a mere half-interest) was
transferred. Although Hardy asserts, conclusorily, that she
challenged these findings below, the appellate record indicates
otherwise. Thus, these claims were waived. See Clauson, 823 
F.2d at 666.

10

Nov.16, 1994). Hardy's failure to challenge the ruling in the

district court deprives us of the benefit of the district court's

rationale. Nonetheless, absent district court findings suggest-

ing any adequate basis for departing from the so-called American

Rule, BTZ, Inc. v. Great Northern Nekoosa Corp., 47 F.3d 463, 465 

(1st Cir. 1995) (noting, as a general rule, that litigants must

bear their own attorney fees absent statutory authority, or

agreement, to the contrary), and since we are unable to discern a

sufficient basis for doing so on the present record, the attorney

fee award must be vacated.9

B. Marcucci Cross-Appeal B. Marcucci Cross-Appeal 

1. Joint Accounts 1. Joint Accounts 

Marcucci cross-appeals from the district court order

disallowing his claims to the joint accounts. He contends that

he established exclusive title to the accounts "converted" by

Hardy, and, alternatively, that he was entitled to have a con-

structive trust imposed on the accounts, lest Hardy be unjustly

enriched.10

a) Conversion Claim a) Conversion Claim 
 

9The citation to Harkeem, supra, cannot suffice, since the 
district court articulated no basis upon which Hardy's litigation
tactics could be found impermissibly obdurate, noting only that 
the lawsuit should never have "wended its way to federal court." 
See also Touch, 43 F.3d at 757-59 (discussed supra note 3). This 
seems to us altogether inadequate to take this case out from
under the American Rule. On this record, therefore, the attorney
fee award must be vacated.

10Marcucci's alternative "claim" to an accounting fails,
since the district court supportably found that Hardy had exer-
cised due diligence in reconstructing the relevant activity in
the joint accounts.

11

Although the district court did not state its grounds

for rejecting the conversion claim, the rationale is clear. "An

action for conversion is based on the defendant's exercise of

dominion or control over goods which is inconsistent with the

rights of the person entitled to immediate possession." Rinden 

v. Hicks, 408 A.2d 417, 418 (N.H. 1979). The right to possession 

is a key element, see, e.g., McGranahan v. Dahar, 408 A.2d 121, 

126 (N.H. 1979), which the claimant must establish. See Wujno- 

vich v. Colcord, 202 A.2d 484, 485 (N.H. 1964) (to recover 

property allegedly converted, plaintiff had burden of proving

title).11

The district court rejected the all-or-nothing posi-

tions advanced by both parties that each held exclusive title

to the accounts notwithstanding their joint status.12 It found
 

11Under the law of all three jurisdictions conceivably
applicable to this claim, intent is the central factor in deter- 
mining entitlement to funds held in joint accounts. See 
Grodzicki v. Grodzicki, 226 A.2d 656, 657 (Conn. 1967) (intent of 
original owner of mutual account is an essential factor in
determining rights to account); Blanchette v. Blanchette, 287 
N.E.2d 459, 461 (Mass. 1972) ("In disputes arising while both
parties to a joint bank account are still alive we have frequent-
ly upheld allegations or findings that there was no donative in-
tent."); In re Wszolek Estate, 295 A.2d 444, 447 (N.H. 1972) (to 
establish inter vivos gift of joint accounts, plaintiff must 
prove donative intent and delivery of accounts).

12Although Marcucci notes that his business was the original
"source" of most of these funds, he cites no authority for the
view that this conclusively established his entitlement to all
the funds once the joint accounts had been placed in all three
names. On the other hand, Hardy argued that the mere fact the
funds were held in three names entitled her to withdraw all of
the funds, foreclosing any possibility of conversion. But the
form of the accounts is not conclusive evidence of their owner-
ship where, as here, there is evidence of contrary intent. See 
New Hampshire Sav. Bank v. McMullen, 185 A. 158, 160 (N.H. 1936). 

12

that "Mrs. Marcucci stated repeatedly and openly, sometimes in

[Marcucci's] presence, that she had given money to [Hardy] and

that she wanted [Hardy] to use it for her own enjoyment."

Marcucci, order at 5-6; see Dover Coop. Bank v. Tobin's Estate, 

166 A. 247 (N.H. 1933) (noting that gift of bank accounts is

established by proof of donor's manifest intent to make uncondi-

tional delivery, and donee's acceptance). Not only did Marcucci

fail to establish his ownership of all the funds in the joint 

accounts, Wujnovich, 202 A.2d at 485, but the district court 

found that he failed to show that any ascertainable portion had 

not been intended as a gift to Hardy. Further, Hardy expended 

"substantial amounts" for Marcucci's benefit.13 Given these

supportable findings, we cannot fault the district court ruling

that it may well have been speculative to conclude that Marcucci

sustained any damages; and that the amount of any damages could 

only have been arrived at through conjecture. See Robie v. 

Ofgant, 306 F.2d 656, 660 (1st Cir. 1962) ("[D]amages must be 

proven, that is, they must not be speculative, and [plaintiff]

must not be made more than whole."). The district court did not

err in dismissing the conversion claim.
 

13The district court found that the joint accounts held
$364,663 at the time of Angela's death in October 1988; the
$150,000 loan to the DeFeos was motivated in part by Marcucci's
gratitude to the people who had cared for him during Hardy's
absence; Hardy "paid all common living expenses and all particu-
lar living expenses" not covered by Marcucci's social security
benefits. Hardy also used $173,000 from a joint account to buy a
home in Colorado, where Marcucci lived until Hardy and Marcucci
relocated to New Hampshire. 

13

b) Constructive Trust b) Constructive Trust 

Alternatively, Marcucci claims that a constructive

trust should have been impressed to preclude unjust enrichment of

Hardy. We review for abuse of discretion. Texaco Puerto Rico, 

Inc., v. Department of Consumer Affairs, 60 F.3d 867, 874 (1st 

Cir. 1995) (citations omitted). Marcucci therefore must show

that the district court's rejection of the constructive trust

claim constituted "a serious lapse in judgment." Id. at 875.  

Although the record reflects that all but $18,000 in

the joint accounts (deposited by Hardy) derived from Marcucci, it

is equally clear that large sums were expended for his benefit.

Moreover, the district court supportably found that Angela

intended to give Hardy an unspecified portion of the joint 

accounts for her exclusive use, Marcucci was present when Angela

declared her donative intent, and he knew that Hardy was handling

the joint accounts. 

A constructive trust may be created where the particu-

lar confidential or fiduciary relationship would give rise to a

significant potential for unjust enrichment absent equitable

relief. See Carroll v. Daigle, 463 A.2d 885, 888 (N.H. 1983). 

The district court supportably found that Hardy used approximate-

ly $173,000 to purchase property for herself in Colorado and the

record would support findings that Angela had given Hardy the

money for the house and that Marcucci derived benefit from living

there with Hardy. Since a substantial portion of the remainder

had been used for Marcucci's own benefit, or their mutual bene-

14

fit, and it was impossible to determine how much each was enti-

tled to receive, we find no abuse of discretion. 

2. "Marcucci Family Trust"  2. "Marcucci Family Trust" 

Finally, Marcucci argues that Hardy breached her

fiduciary duty, under the so-called "prudent man" standard, see 

N.H. Rev. Stat. Ann. 564-A:3, I (1974), by improperly lending

$150,000 from the Marcucci Family Trust to the DeFeo family, and

that she is chargeable with the loss. Hardy responds that her

withdrawal of funds from a revocable trust constituted a con-

structive revocation of the trust, (2) Marcucci consented to this

allocation of trust funds, and (3) the allocation was reasonable

and did not violate the "prudent man" standard.

We need not consider whether Hardy violated the "pru-

dent man" standard, because the district court found that Marcu-

cci actively encouraged the $150,000 loan to the DeFeos. A

trustee is not liable to a beneficiary for breach of trust if the

beneficiary consented to the action. Restatement (Second) of

Trusts 216(1) (1957) (endorsing estoppel rationale); Mahle v. 

First Nat'l Bank of Peoria, 610 N.E.2d 115, 116-17 (Ill.App.3d.) 

(beneficiary consented to risky loan to nephew), cert. denied, 

622 N.E.2d 1209 (Ill. 1993). There is ample evidence to support

the finding that Marcucci consented to the $150,000 loan, with

the knowledge that the DeFeos were about to lose their own home

due to financial problems. Thus, we find that Marcucci is

estopped from challenging Hardy's decision to make the DeFeo

loans. 

15

III III

CONCLUSION CONCLUSION 

The district court judgment is affirmed, except for the The district court judgment is affirmed, except for the 

attorney fee award, which is vacated. Costs are awarded to the attorney fee award, which is vacated. Costs are awarded to the 

respective appellees in Nos. 94-2290 and 95-1005. So ordered.  respective appellees in Nos. 94-2290 and 95-1005. So ordered.  

16